## Fincher v. The State.

### Indictment for Murder.

58  215
.135  12

58  215
139  46

1. *Witness for prosecution; credibility of, how may be assailed.*—The credibility of a witness for the prosecution may be assailed, by proof of hostility to the prisoner, or other motive, which may be fairly presumed to bias the witness in favor of the State and against the prisoner; and although the witness admits such hostility or bias, the prisoner has the right, on cross-examination, to draw out particular declarations, that the jury may determine the extent and malignity of such hostility.

2. *Same.*—The proper predicate having been laid, it is error not to allow the prisoner to ask a witness for the State, on cross-examination for the purpose of assailing his credit, whether the witness had not stated he would give a sum of money to have the prisoner killed.

3. *Witness; competency of.*—The wife of a person who was at one time charged with the murder, for which the prisoner is indicted and tried, is a competent witness on the trial to testify to facts exculpatory of the husband, whom the defense sought to prove the guilty agent in the murder.

4. *Evidence; admissibility and relevancy of.*—The testimony of a witness, who lived in the prisoner's family the Spring before a murder which he was accused of committing that Fall, as to where he kept his gun, and as to the hour at which certain of his children, who were witnesses, arose, is too remote to afford any reasonable inference as to where the gun was kept the night preceding and on the morning of the murder, or as to what time the children rose that morning ; and is properly excluded.

5 *Charge; what properly refused.*—A charge that the suppression of evidence by the prosecution is a material circumstance for the consideration of the jury, is properly refused, when it is not shown that the evidence would shed any light on the guilt or innocence of the accused, or that it was in the possession of the prosecutor or was improperly withheld.

APPEAL from City Court of Mobile.
Tried before Hon. O. J. SEMMES.

The appellant, Thomas Fincher, was convicted of the murder of Simeon Wheeler, and sentenced to imprisonment in the penitentiary for life. Wheeler was quite an old man, and was in the habit of walking from his residence, near "Eight Mile Creek," to Spring Hill, and there taking the cars for Mobile, every Monday morning. On Monday, October 12th, 1874, his body was found on the public highway, with half of his head shot off, and powder-marks on his neck and face. Near his body was his hat and some bits of

paper, to which reference will be made further on. He had evidently been killed about sunrise that morning. Fincher traveled on the same road later in the morning, and lived about a mile from where Wheeler was killed, and the evidence, connecting Fincher with the murder, was purely circumstantial.

Many angry remarks and threats by Fincher against Wheeler before the killing were proved; and among the witnesses who testified to them was one Broaddus, a witness for the State, who testified that Fincher, in the Spring of 1874, had said that "Wheeler was an old hog, and he meant to break him up one way or another." On cross-examination, the witness stated that he was not on friendly terms with Fincher; that he was not on speaking terms with him; that threats had passed between them, and they had quarreled about a dog. The defendant's counsel then asked: "Did you, at Fincher's house, about twelve months before the first shooting of Fincher, which was in February, 1867, tell Napoleon Long that you would give $250 as your share to have Fincher killed?" The court, at the instance of the State, refused to allow the witness to answer, and the defendant excepted.

It appeared from the testimony, that one George Spencer, a negro man, had, at one time, confessed that he had killed Wheeler; that the confession was made to Fincher while he had Spencer under arrest for stealing a gun, and that Fincher carried Spencer before a magistrate, who committed him to jail. Spencer remained in jail about a year, but was never tried, and at the time of this trial was at liberty. An admission was made by counsel of the facts to which he would testify if present. His statement consisted of a detailed account of how he came to make the confession; that it was false, and made by the procurement of Fincher, who promised to divide the reward with him, and prevent him being harmed. There was testimony tending to show that Spencer lived in the neighborhood and could have committed the offense. Spencer's wife, against the objection and exception of the defendant, was permitted to testify to facts going to show that he was not the person who killed Wheeler, and to prove an *alibi* for Spencer at the time of the killing, and also contradictory of his being in want, which was one of the reasons given in his confession, for committing the murder.

Among other criminating evidence relied on by the State, was the testimony of witnesses, who, at that time, resided in Fincher's family, as to his conduct in loading his gun the evening before the murder, and remarks made by him shortly before and after that, and as to his gun being missing from

[Fincher v. The State.]

its accustomed place, early on the morning of the murder, about which time Fincher was shown to have left the house. It was shown that Fincher slept in a room outside the main building, and that when he retired to sleep, the doors of the main building were fastened, and he could not get in until the doors were unfastened in the morning. Some of the witnesses for the State testified that Fincher always kept his gun in a rack over the bed, in the room in which he slept, and that he did this for a long time before the murder. A witness for the defense afterwards testified that there was no gun-rack in the room in which Fincher slept. Two step-children of Fincher, who then resided in his family, testified in behalf of the State, to certain statements made by Fincher at breakfast, on the morning of the murder, with regard to the deceased. Another step-child testified in his behalf that she was present and no such declarations were made; but she was contradicted in this by the other two, who testified that she had not gotten up that morning, and was not at breakfast.

The defense, among other witnesses, introduced a Mrs. Demorest, who stated that she was living at Fincher's the Spring before the murder, and that the defendant then kept his gun in a rack in the sitting room, and that this was his habit at that time. On motion of the State the court ruled out this evidence, and the defendant excepted. This witness further stated, that she had lived at Fincher's all that winter before the killing, and was familiar with every thing about the house and family. She was then asked "what were the habits of the family about getting up at that time;" but, on objection of the State, the court refused to allow the witness to answer, and the defendant excepted.

It was shown by the State, among other things, that on Friday before the killing, defendant remarked to a witness, that "old man Wheeler had some papers against him, which he (Wheeler) was going to bring before the grand jury, but that he should never cross Eight Mile Creek with them." It was proved that a short time before his death, Wheeler had gotten several of his neighbors to sign a paper, charging the "defendant and one Boker and Thompson, and a dozen others, with gambling and selling whiskey."

When Wheeler's body was discovered, there were some bits of paper near by, which seemed to have been there only a short time. Several witnesses testified that they did not know what became of them. A witness for the defense testified that the pieces were torn up so small that they could not be read, and the witness could not state that they were parts of the paper referred to, but he saw on some of the

pieces names of some of the persons that Wheeler had on the paper he intended to lay before the grand jury. This witness testified that he picked up these pieces of paper, and handed them to Mrs. Brown, who handed them to a son of Wheeler, who, as the bill of exceptions recites, "had been present during the whole trial, making suggestions to the solicitor." It was shown that Fincher could neither read nor write. There was no evidence that these bits of paper had been preserved, or to show what had become of them, nor does it appear that any demand was made for their production.

The testimomy was voluminous, but the foregoing is all that is material to the questions presented by the exceptions.

Among other written charges requested by the defendant, was the following: "The court charges the jury that they may consider the evidence of the witnesses about the pieces of paper picked up near the spot where the body of Wheeler was found, and if they believe the said pieces of paper were traced to the prosecution, the withholding of said pieces of paper from the jury may be considered as evidence favorable to the accused." The court refused this charge, and the defendant excepted.

The refusal to charge as requested, and the various rulings to which exceptions were reserved, are now assigned for error.

W. S. ANDERSON and JOHN H. GLENNON, for appellant.—The court erred in refusing to allow the question put to Broaddus to be answered. It is true he admitted he was unfriendly to the prisoner; but he made light of the cause of his hostility, intimating that it arose from a quarrel about a dog. The prisoner had the right to show by the witness' own declarations, that the hostility was more deadly than that, and to show to the jury from what an envenomed source the testimony of this witness was drawn.—*McHugh v. The State*, 31 Ala. 320.

Spencer's wife was not a competent witness to prove the facts to which she testified. She testified to no facts showing Fincher's guilt, or connecting him with the murder. Her testimony only went to show that her husband was not the guilty agent, which the testimony for the defense went to prove him. It is true, neither she nor her husband are parties to the record, but the rule which excludes her is based on public policy and not on interest. If Fincher was acquitted, the tendency was to put her husband on trial in his place, and if he had been on trial she would not have

[Fincher v. The State.]

been competent. The rule ought to work both ways.—*King v. Clivinger*, 2 Tenn. 263.

Mrs. Demorest's testimony should have been received. It tended to contradict materially the statement made by witnesses for the prosecution, and to strengthen the testimony of a witness as to such witness' presence when a conversation took place. Where the gun was kept the morning and day before the murder, was material, and whether the witness, who stated she was at the breakfast table, was present, were matters of vital importance to the defendant. The fact that the evidence was weak or inconclusive, does not affect its admissibility.

John W. A. Sanford, Attorney-General, *contra.*

BRICKELL, C. J.—Of the several modes of assailing the credibility of a witness, the one most usually resorted to, is a cross-examination as to his relationship to the parties, his interest in the pending suit, his hostility to the prisoner, if it be a prosecution for a criminal offense, his motives, and whatever may fairly be presumed to bias him in favor of the party at whose instance he is testifying, and against the adverse party. These are matters collateral to the main issue of facts which is to be determined; and while the general rule is, that the answers of a witness to collateral questions cannot be contradicted by the party cross-examining, an exception obtains in reference to questions of this character, which are directed, not against his *general credit*, but against his *credit*, and *capacity* to testify accurately in the *particular* case.—1 Whart. Law of Ev. § 545; *McHugh v. State*, 31 Ala. 317; *Bullard v. Lambert*, 40 Ala. 204; 1 Green Ev. § 450; *Blakey v. Blakey*, 33 Ala. 611. The circumstances which affect the *particular credit* of the witness, are generally incapable of proof save by his acts or declarations, and it is but just that the witness should have his attention directed to them, and whatever explanation can be given of them without entering into particulars, should be received.—4 Phill. Ev. (2 C. & H. Notes) 717. If the witness should deny the relationship or bias, it may be proved by other evidence. Declarations in the presence of third persons, indicative of hostility, may be called to the attention of the witness, and he may be required to admit or deny them; if he deny them the persons hearing them, to whom the attention of the witness is directed, may be called to contradict him. How far the bias of the witness, from whatever cause it arises, affects his credibility, is a question for the consideration of the jury, and depends upon his manner of testifying before them, the

[Fincher v. The State.]

consistency of his evidence with other evidence in the cause, and the probability of its truth or falsity when considered in connection with all the facts and circumstances surrounding the parties, and which are parts of the transaction. The law does not discredit the witness because of the bias—it is simply a fact for the consideration of the jury in determining how far they can safely rely on his testimony. A remote relation would not usually lie under the same imputation on his credit, as a nearer relation whose sympathies and affections were more deeply involved. A hostile feeling, generated by a sudden quarrel, would not reflect the same discredit as that which is shown to be malignant. The extent of the hostility of the witness, is the subject of just inquiry. It is not enough, and the door to further cross-examination is not closed, so that it does not descend to the particulars of the controversy between the witness and the party, by the mere statement of the witness that he is hostile to the party against whom he is testifying. The party has the right to go further, and show that the hostility is malignant and that the witness has the inclination, and would not scruple at the means or manner of doing him the most grievous injury. We hold, therefore, the City Court erred in refusing to permit the question propounded the witness to be answered.

2. Mrs. Spencer was not an incompetent witness; nor was there any objection to her testifying to facts which repelled all suspicion of her husband's guilt of the murder, with which he had at one time been charged. Husband or wife are not parties to the record, and have no interest directly involved in the prosecution. The judgment of conviction or acquittal, could not become evidence for or against the one or the other, except so far as it would be evidence for or against other strangers to it.—1 Green. Ev. §§ 241-342; 1 Phill. Ev. 71-72; Powell v State, MSS.

3. The general rule in regard to the relevancy of testimony, is, that the facts and circumstances which, when proved, are incapable of affording any reasonable presumption or inference, in reference to a material fact or inquiry involved in the issue, cannot be given in evidence.— Governor v. Campbell, 17 Ala. 566; Campbell v. State, 23 Ala. 44. In practice, the application of the rules presents most embarrassing questions, and it is often a matter of serious difficulty to determine whether a particular fact or circumstance is not too remote to aid the jury in arriving at a conclusion upon the principal fact to be proved, and its introduction would not confuse and mislead, directing their attention from the real issue. The only tendency of the evidence sought to be elicited from Mrs. Demorest, was the contradiction of

the witness who testified that at and before the murder, the prisoner kept his gun on a rack in his bed room, and as to the time these witnesses rose from bed on the morning of the murder. The place at which Fincher kept his gun, and the habits of the family as to rising when Mrs. Demorest lived there, have a very remote bearing, if any, on the fact of where the gun was the night preceding and the morning of the murder, and on the fact of whether the State's witnesses, members of the family, were up at a particular hour of that morning. If her evidence had been admitted, it would have been subject to be controverted, and the jury would have been embarrassed in determining a disputed fact, which, when ascertained, would not have advanced them in the determination of the principal fact.

4. The suppression of evidence by a prisoner or prosecutor, is a material circumstance to be considered by the jury. But we cannot perceive that the principle has any application to the present case. There was no ground on which an inference could be rested that the pieces of paper, referred to in the charge requested by the prisoner, would have shed any light on the inquiry as to his guilt or innocence—none for supposing that they had been preserved, or were in possession of the prosecutor at the time of the trial, and were improperly withheld by him. There must be evidence in the possession of the prosecutor which he withholds, and material evidence, before a charge of this kind should be given.

For the error we have pointed out, the judgment is reversed and the cause remanded. The prisoner will remain in custody until discharged by due course of law.