404 P.2d 97

**STATE of Arizona, Appellee,**

v.

**Howard BIRCHFIELD, Appellant.***

**No. 2 CA–CR 22.**

Court of Appeals of Arizona.

July·9, 1965.

Review Denied Sept. 21, 1965.

Darrell F. Smith, Atty. Gen., Phoenix, Robert W. Pickrell, Former Atty. Gen., Phoenix, Howard Schwartz, Asst. Atty. Gen., Phoenix, Richard J. Riley, County Atty., Cochise County, Bisbee, Alan L. Slaughter, Deputy County Atty., Cochise County, Bisbee, for appellee.

Lawrence C. Cantor, Phoenix, for appellant.

KRUCKER, Chief Judge.

Defendant, Howard Birchfield, was informed against by the County Attorney of Cochise County, arraigned November 19, 1963, and tried by a jury on January 15–17, 1964, on a charge of drawing a check on insufficient funds. The jury returned a verdict of guilty on January 17, 1964.

Motion for a new trial and motion to quash the information were denied and the defendant was sentenced on February 25, 1964, to a term in the Arizona State Prison of not less than eighteen months nor more than four years.

From this judgment and sentencing the defendant appeals.

Briefly, the facts are as follows:

Defendant was an incorporator and president of Pacific Fluoride Company, Inc., a Texas corporation authorized to do business

* This appeal was filed with the Arizona Supreme Court was assigned that Court's Number 1448. The matter was referred to this Court pursuant to Section 12–120.-23 A.R.S.

in Arizona. Defendant moved to Benson, Arizona in August 1963, for the purpose of mining operations at the Lone Star Mine near Benson, Arizona. Near the end of August, defendant introduced himself to a Mrs. LaFleur, owner of Zeke's Country Store and Motel, requesting the rental of a motel room. On August 31, 1963, defendant wrote a check for $20.00, with Pacific Fluoride Company as drawer, upon The Long Point National Bank of Houston, Texas, for a few items of merchandise and some cash. On September 1, 1963, Mrs. LaFleur received two more such checks written by defendant, one in the amount of $50.00 for rent of the motel room. During the next ten days, Mrs. LaFleur received five more checks written by defendant. In all, the checks totaled $293.00. All of these checks were returned marked "Insufficient Funds".

The record further indicates that on August 28, 1963, the account of Pacific Fluoride Company at The Long Point National Bank in Houston, Texas, was overdrawn in the amount of $217.00, and remained overdrawn at all times material to this case. Defendant admits writing the checks in question, asserting as a defense, lack of notification and knowledge that the account was overdrawn.

On October 10, 1963, Mrs. LaFleur signed a sworn complaint against the defendant. Prior to defendant's arrest, a Mr. Toy, a peace officer from Benson, Arizona, went to the minesite and there found the defendant. Toy testified that when asked for his identity the defendant gave the false name of Elmer Von Glahn. A portion of the testimony of Officer Toy was as follows:

"Q Now was there any further conversation immediately following this statement concerning the Von Glahn business?

A Yes, sir. Mr. Von Glahn stated that he was in the company and that a manager, the manager of the mine had taken him and his colleagues, as he phrased it, for $80,000.00.

Q And did he name the manager of the mine?

A Yes, he did.

Q What was the name of the manager of the mine?

A Howard Birchfield, he said.

Q He said Howard Birchfield had taken him and his colleagues for more than $80,000.00?

A $80,000.00.

Q Now prior to this time, had you identified yourself as a police officer?

A I did.

*    *    *    *    *    *

Q * * * I show you State's Exhibit 12, which purports to be a piece of paper, and ask you if you recognize it.

A Yes, sir, I do.

Q And what is it?

A It is a name and address that Mr. Von Glahn wrote on my scratch pad, my secretary pad.

Q And when you say 'Mr. Von Glahn,' who do you mean?

A Now I know it to be Mr. Birchfield."

Other than the September 1, 1963 check of $50.00, the State offered into evidence seven other checks written by defendant and admitted into evidence over defendant's objection.

Defendant cites five assignments of error and five propositions of law which, briefly, are as follows:

First, that the court erred in not granting defendant's motion for a continuance; second, denial of defendant's motion for a mistrial when a police officer testified to another offense which had no connection with the offense charged; third, the lower court erred in commenting on the evidence; fourth, that the court erred in denying a mistrial for improper argument of counsel; and fifth, that the court erred in not honoring an affidavit of bias and prejudice and in not granting defendant's motion for a change of judge.

438

■ We will discuss the second assignment of error first, dealing with a motion for a mistrial where the peace officer Toy testified regarding the conversation with defendant. Defendant relies on State v. Hunt (1962), 91 Ariz. 145, 370 P.2d 640. Also see State v. Saenz (1965), 98 Ariz. ——, 403 P.2d 280. The State contends that the testimony of Officer Toy was admissible to show a consciousness of guilt. We believe that this position is correct. Evidence that after the offense accused assumed another name is relevant to show a consciousness of guilt. Vol. 22A C.J.S. Criminal Law § 627, Page 472. Wigmore on Evidence, 3d Edition, Vol. 2, § 276, page 111, states:

"It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself."

We believe the trial court was correct in admitting officer Toy's testimony that defendant, obviously aware that there was a possibility of a warrant for his arrest, gave a false name and a false reason for being at the minesite. Such falsehoods by an accused are relevant since the obvious purpose was misleading or warding off suspicion or arrest. People v. Liss, (1950) 35 Cal.2d 570, 219 P.2d 789; People v. Proctor (1959), 169 Cal.App.2d 269, 337 P.2d 93; Vol. 22A C.J.S. Criminal Law, § 636, Page 489.

■ As to the first assignment of error, we do not think the court erred in denying the motion for a continuance as defendant had stated at the arraignment and trial that he did not wish counsel. Both sides announced they were ready, and defendant did not ask for counsel until after the trial had started and twenty-four jurors had been called into the box, sworn and voir dired by the court, prosecution and defendant. The court immediately appointed qualified counsel.

■ As to the third assignment of error, it is not considered a comment on the evidence where the trial judge merely explained the reason for the admission of certain exhibits without any statement as to his opinion, and he carefully instructed the jury at the conclusion of the trial on this point.

Our Supreme Court on many occasions has stated that the trial judge may show his reasons for ruling on the admissibility of evidence and it is not a comment on the evidence or a violation of the Arizona Constitution, Section 12, Article VI, A.R.S. State v. Owen (1963), 94 Ariz. 404, 385 P.2d 700; Johnson v. State (1928), 33 Ariz. 354, 264 P. 1083; State v. Benham (1941), 58 Ariz. 129, 118 P.2d 91.

The fourth point raised by the appellant refers to improper argument of the county attorney. In the opening argument he stated:

"Maybe we don't think in the same train of thought, though, because there has been more, there has been more standing off, there has been more difficulty getting this case to trial than you would believe."

No citations are given and appellant argues that there is an inference that the defendant was delaying or stalling.

■ The statement complained of is not prejudicial. It could have been answered by defense counsel and was not part of the State's final argument. Counsel is given wide latitude in the scope of arguments. State v. Dowthard (1962), 92 Ariz. 44, 373 P.2d 357; State v. Adams (1965), 1 Ariz.App. 153, 400 P.2d 360.

■ The final assignment of error deals with the court's refusal to recognize an affidavit of bias and prejudice against the trial judge and a request for a change of judges. Due to the absence of a transcript of the record of the first day's proceedings (January 15, 1964) because of the illness and death within a week of the official

court reporter [1] it is somewhat difficult to tell exactly what took place. However, the clerk's minute entry of January 15, 1964 discloses the following:

"This cause came on regularly this date for trial before a jury with the Honorable Anthony T. Deddens, Judge, presiding. The State being represented by County Attorney Richard J. Riley, Esq. and Deputy County Attorney Alan L. Slaughter, Esq. and the Defendant present in person but without counsel.

Counsel and defendant announced ready and upon order of the Court the Clerk drew from the jury box the names of 24 trial jurors and administered to them the oath on voir dire.

The Court examined the panel collectively; after which counsel examined the panel individually and defendant examined the panel collectively and defendant filed in open court an affidavit of bias and prejudice; the County Attorney requested that the jury be excused; the Court excused the jury and;

In the absence of the jury; the defendant and the County Attorney made statements to the Court and the Court denied the Motion for Change of Judge;

The Defendant then requested that the Court appoint an attorney to represent him. The Defendant was sworn and the County Attorney examined him as to his ability to employ counsel;

It is Ordered: James B. Greenwood, Esq. is hereby appointed to represent the defendant in this matter; and the Court ordered a recess."

It is clear from the record that the application for change of judge did not comply with 17 A.R.S. Rules of Criminal Procedure, Rule 199, as there was no showing in the affidavit that the defendant had reason for not filing the affidavit within the three-day period.

We find from the record that the defendant knew who the trial judge would be for a long period of time. Such an affidavit must be honored if properly and timely made, but in this case it was untimely. The affidavit was not in compliance with Rule 199, and was made after the trial had started.

For the reasons stated herein, the judgment of the trial court is affirmed.

HATHAWAY and MOLLOY, JJ., concurring.

---

[1]. Another official court reporter was present on January 16, 1964, and at all subsequent proceedings.

