UNITED STATES of America, Appellee,

v.

**Gary James BOYLE, Defendant, Appellant.**

No. 81–1375.

United States Court of Appeals, First Circuit.

Argued March 5, 1982.

Decided April 14, 1982.

Joseph F. Flynn, Rockland, Mass., by appointment of the Court, for defendant, appellant.

William F. Weld, U. S. Atty., with whom Robert B. Collings, Asst. U. S. Atty., Chief, Crim. Div., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Gary James Boyle appeals from his conviction of armed bank robbery in violation of 18 U.S.C. § 2113(d).[1] He challenges the admission of evidence that he was using an alias at the time of his arrest and the district court's instruction to the jury on the elements of his offense. We affirm the conviction.

At about 1:30 p. m. on January 23, 1981, the Union National Bank in Lowell, Massachusetts, was robbed by an unmasked man who approached Barbara Cederberg, a teller, and asked if she had any "large bills." When she replied that she did not, the man showed her a gun that he had concealed in his pocket, demanded "large bills," and said that he "meant business." Mrs. Cederberg then looked from side to side to see if she could catch the attention of another teller. While she was doing this, she heard a "click," turned, and saw that the man was pointing his gun directly at her. She then quickly emptied her cash drawer of some $2,075 in small bills—5's, 10's, and 20's. The robber took the money and hurried out of the bank, bumping as he did so into two customers, a Mr. Leonard Richards and his mother, Mrs. Richards. During the robbery, bank surveillance equipment made several photographs of the robber. After the robber had left, Mrs. Cederberg alerted the bank that she had been robbed. Several people ran outside to see if the man was in sight, but he had disappeared.

Several days after the robbery, Mrs. Cederberg and the two Richards independently picked the defendant's picture out of photo arrays shown to them by the FBI. All three subsequently identified Gary Boyle as the robber at Boyle's trial. In addition, at Boyle's trial Mrs. Cederberg testified that the photographs taken by the bank's surveillance equipment accurately portrayed the individual who had robbed her. These photos were placed in evidence.

The only other evidence offered by the government at the trial was that, at the time of his arrest (some six days after the robbery), Boyle was observed by an FBI agent registering at the Milner Hotel in Boston under the name "Thomas Crowley." After he was arrested, the FBI found that Boyle had on his person two identification cards bearing the Crowley alias. One of these was stamped with an expiration date of January 4, 1981. Boyle also had seventeen $20 bills in his possession. The hotel registration card, the two phony ID's, and the FBI arresting agent's testimony were all offered to show Boyle's consciousness of guilt of the bank robbery.

Boyle's defense consisted of a single witness, one Michael Willis, who testified that Boyle was a heavy drinker who worked sporadically at a parking lot Willis managed on Tremont Street in Boston. Willis stated that Boyle had worked for him on January 23, the day of the robbery, from 12 noon until about 5:00 p. m. He further testified that he had loaned Boyle $20 on January 24 in order for Boyle to play the "street lottery." He learned later that day from a "bookie" of the lottery that Boyle had "hit" his number. Willis was able to recall the dates specifically because Boyle had never

---

1. 18 U.S.C. § 2113(d) punishes bank robbery by a person who "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device...."

repaid Willis's loan. Indeed, Willis testified that he never saw Boyle again (until the trial) after advancing him the $20. Finally, Willis stated that Boyle sometimes went by the name "Tommy" when he entered a detoxification center.

Boyle argues on appeal that the evidence of the fact that he was using an alias when he was arrested should have been excluded as overly prejudicial. Fed.R.Evid. 403.[2] Defendant argues that the probative value of the alias evidence was particularly slight in his case because he was a fugitive from several other warrants issued for other crimes the year prior to the robbery and thus could have been using the alias to escape detection for those crimes rather than the crime at issue. *Cf. United States v. Myers*, 550 F.2d 1036, 1048–51 (5th Cir. 1977), *after remand*, 572 F.2d 506 (5th Cir.), *cert. denied*, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978) (evidence of flight not admissible to show consciousness of guilt of earlier crime where defendant has recently committed another crime). In addition, there was evidence that Boyle used the alias for the apparently innocent purpose of checking into detoxification centers. Since introduction of the alias evidence would force the defendant to put on potentially prejudicial proof either that he was a fugitive from other crimes or that he was a drunk, Boyle argues that the evidence should have been excluded.

The use of a false name after the commission of a crime is, as the defendant acknowledges, commonly accepted as being relevant on the issue of consciousness of guilt. *See United States v. Ballard*, 423 F.2d 127, 133 (5th Cir. 1970); *Marcoux v. United States*, 405 F.2d 719, 721 (9th Cir. 1968); 2 *Wigmore on Evidence* § 276 (Chadbourne rev. 1979). In the present case, we have no difficulty concluding that it was both relevant and probative on the issue of Boyle's alleged participation in the crime charged. The evidence showed that Boyle had used a false name when checking into a hotel only six days after the robbery. While he may have had an explanation for

this, the fact remains that few people use false names in the normal course, and the desire to evade capture for a recent robbery would be a logical reason for doing so. Indeed, the circumstances here lent themselves to the conclusion that the alias evidence in this case was particularly probative. Before ruling on admissibility, the district judge was informed by defense counsel that federal and state authorities were seeking Gary Boyle, apparently under that name, under a number of fugitive warrants issued for other robberies. Boyle was presumably aware of this and would therefore have had good reason to believe that both his name and face were known to police authorities. The district court was also aware that the robbery here at issue was committed by an *unmasked* robber who must have known he was seen by eye witnesses as well as bank surveillance equipment. A robber who knew he had been seen during a holdup and who further knew that the police had records and identification photos of him under his real name, might well use an alias when checking into a hotel soon after the crime to avoid being detected by police conducting routine name searches at local hotels.

Boyle is not helped by *United States v. Myers*, 550 F.2d 1036. In *Myers*, the defendant committed two robberies some six weeks apart and tried to flee when accosted two weeks after committing the second one. The Fifth Circuit held that evidence of this flight was not admissible to show consciousness of guilt of the *first* robbery. Putting aside whether or not we agree in all respects with *Myers*, the present case is readily distinguishable from it. The bank robbery here was the most recent of Boyle's alleged crimes. Thus, it would be reasonable to infer from the use of an alias only some six days after the unmasked bank holdup that the defendant was seeking to conceal his true identity from police investigating this fresh crime. Certainly we find little to commend defendant's broad proposal to bar "alias" evidence whenever a defendant has committed more than one crime. Under it, the more crimes a person

---

**2.** Fed.R.Evid. 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...."

commits using an alias, the less able the prosecutor would be to use the alias as evidence. Such a rule would ignore the substantial possibility that the defendant is using the alias to evade detection for *all* of his crimes, including the one charged.

Turning to the degree of "unfair" prejudice suffered by Boyle through admission of this evidence (as distinct from the proper "prejudice" which all defendants must suffer when probative evidence is introduced against them), we find it less than Boyle claims. The evidence he offered to explain use of the alias—that he used the name "Thomas Crowley" when checking into detoxification centers—did not paint him as a particularly vicious or criminal "type." Indeed, his choice to elicit testimony that he had won the "street lottery" (presumably to explain the fact that he had seventeen $20 bills when arrested) may have placed him closer to criminal "elements" than did the evidence that he drank. The district court did not abuse its discretion, therefore, in ruling that the alias evidence was probative and that it was not "substantially" outweighed by any danger of unfair prejudice.[3] Fed.R.Evid. 403. *See United States v. Gonsalves*, 668 F.2d 73, 76 (1st Cir. 1982). We thus affirm the district court's ruling admitting the evidence.

█ Defendant next claims, though he did not raise this issue before the district court, that the district court erred in failing to instruct the jury that someone's life had objectively to be "put in jeopardy" in order to find him guilty as charged in his indictment. Boyle asserts that, since his indictment states he "did assault *and* put in jeopardy the lives of persons by use of a dangerous weapon, to wit: a gun;" (emphasis added), the lack of such a specific instruction was plain error and warrants reversal. We have examined the district court's instruction in detail and find that no plain

error was committed. Fed.R.Crim.P. 52(b). The court made it clear to the jury that it was required to find that a gun was used in the robbery and that this gun was capable of being fired and inflicting serious bodily harm. The variance between the indictment, which states that the defendant both assaulted *and* put lives in jeopardy during the robbery, and the referenced statute—18 U.S.C. § 2113(d)—which states that an offense is committed when someone assaults *or* puts life in jeopardy, is immaterial where, as here, "one of the several allegations linked in the conjunctive [in the indictment] is proven." *United States v. McCann*, 465 F.2d 147, 162 (5th Cir. 1972), *cert. denied*, 412 U.S. 927, 93 S.Ct. 2747, 37 L.Ed.2d 154 (1973). Thus, even if the jury found only that Boyle assaulted someone with a dangerous weapon, a finding which was amply supported by the evidence and sufficiently alluded to by the district court, this would sustain a conviction under section 2113(d) and the present indictment.

*Affirmed.*

---

**3.** Appellant also argues that "unfair prejudice" arose because a complete explanation of his use of the alias would have required Boyle to reveal to the jury the existence of the other criminal charges pending against him, and he was deterred from so doing by the unfavorable impression this would have made. We are not impressed with this contention. Probative evidence is often admissible even though it reveals other criminality. *United States v. Eatherton*, 519 F.2d 603, 611 (1st Cir. 1975). Even less should the government be deprived of important probative evidence merely because one of defendant's possible answers thereto would necessitate revealing that he had been charged with another crime.