541 A.2d 988

**Willie Earl WRIGHT**

v.

**STATE of Maryland.**

**No. 149, Sept. Term, 1987.**

Court of Appeals of Maryland.

June 7, 1988.

Julia Doyle Bernhardt, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for appellant.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

MURPHY, Chief Judge.

Willie Wright was charged in the Circuit Court for Montgomery County with robbery with a dangerous and deadly weapon and use of a handgun in a crime of violence. At the beginning of his trial before a jury, the clerk stated to the jury that Wright had "pleaded guilty." The clerk's statement was wrong, since Wright had pleaded not guilty at his arraignment. Neither the trial judge nor counsel for the parties corrected the clerk's error; presumably, none of them heard the erroneous statement. That at least some jurors heard the clerk's misstatement became evident when the jury retired to consider its verdict. After deliberating for nearly one and one-half hours, the jury sent this note to the trial judge:

> "Jurors would like to have tape played of clerk's opening remarks that defendant pleaded guilty. Jurors heard that defendant pleaded guilty."

The trial judge, as well as counsel, assumed that the jury had misunderstood the clerk's statement. He, therefore, returned the jury to the courtroom and advised it that "Defendant pleaded not guilty ... and anything you heard to the contrary or may have heard is incorrect." After the jury resumed its deliberations, defense counsel and the clerk listened to the tape recording of the clerk's opening

remarks which confirmed the fact that the clerk had indeed told the jury that Wright pleaded guilty. The tape recording also revealed that immediately after the clerk made this misstatement, she told the jury that its charge was "to inquire whether [Wright] be guilty of the matters whereof he stands indicted or not guilty."

Prior to verdict, defense counsel moved for a mistrial. He stated that "the entire process of the trial from beginning to end has been colored in the minds of some jurors with the fact that this defendant had, at the beginning of the trial, pleaded guilty, and as they listened to the evidence ... and ... instructions ... they were under that assumption." The trial judge denied the motion; he concluded that there was neither prejudice to Wright nor a manifest necessity to declare a mistrial. He further noted that while the clerk's misstatement was a serious one, defense counsel in his opening statement had told the jury several times that Wright had pleaded not guilty. The court decided to further instruct the jury on the presumption that Wright was innocent. He again told the jury that the clerk's statement that Wright had pleaded guilty was incorrect. To "right the balance" the trial judge advised the jury:

"[W]e have retrieved the tape and listened to the Clerk's remarks, and it is so that there was a statement made that the defendant had pleaded guilty.

"That was clearly a misstatement. Everybody understands that as far as the parties to the case are concerned, but that is what you heard.

"Because that is what you heard, ... I want to reinstruct you on the issue of presumption of innocence...."

The trial judge thereafter repeated the instruction on the presumption of innocence in these words:

"Every defendant in a criminal case is presumed to be innocent. You should not assume that the defendant is guilty because he is on trial. This presumption of innocence remains with the defendant throughout the trial. The defendant is entitled to every favorable inference which can be reasonably drawn from the evidence, and

unless you are satisfied beyond a reasonable doubt of the defendant's guilt, the presumption of innocence alone is sufficient to require you to acquit; that is, find the defendant not guilty."

Following the court's supplemental instructions, the jury found Wright guilty on both counts. The Court of Special Appeals, in an unreported opinion, found no error in the trial court's denial of the motion for a mistrial. It said that the case against Wright was "close to being overwhelming." It characterized the clerk's error as "a slip of the tongue," which had been rectified by the trial judge in his later instructions. We granted certiorari to consider whether, in the circumstances, the trial judge abused his discretion in failing to grant Wright's motion for a mistrial.

## I.

The case against Wright was based on the following evidence: Miatta Cainen testified that on February 11, 1986, at approximately 1 a.m., she parked her car in the garage under her apartment building. As she walked up the stairway to the building, she met a man who held a small black gun. He said, "Give me your money or you are dead." He then took her briefcase containing her paycheck and school books, walked down the stairway, and out of the complex. Cainen subsequently attended a lineup where she identified Wright as her assailant. She also identified Wright at the trial.

Evelyn Mixon testified that on February 11, 1986 at about 1 a.m. she was standing outside of her car in a parking lot near Cainen's apartment building. She saw a man walking toward the stairway leading to the underground parking garage. She watched him until he went down the stairs and out of her sight. About thirty or forty seconds later Cainen came toward Mixon screaming that someone had just robbed her. At the subsequent lineup, Mixon said that she was 80% certain that Wright was the man she saw walk into the stairway immediately prior to the robbery. At the trial she again identified Wright with 80% certainty.

Detective Gary Krest testified that both Cainen and Mixon picked Wright out of the lineup. Carol Freeman, Deputy District Public Defender for Montgomery County, testified that she attended the lineup representing Wright. She stated that only two of the men in the lineup were light-skinned and that several men had different hair styles from Wright. Further, she testified that Wright was considerably younger, or at least looked younger, than the other people in the lineup.

Officer David Hardy testified that on February 19, 1986 he was working in plainclothes and in a covert capacity. He approached Wright in a bar and asked him to identify himself. Wright provided him with the name Vincent Burroughs.

## II.

It is firmly established that an accused has a constitutional right to a fair trial. *State v. Babb*, 258 Md. 547, 552, 267 A.2d 190 (1970). Of course, due process of law under both the State and Federal Constitutions encompasses the right to a trial before an impartial fact finder. To be impartial, the fact finder must presume the innocence of the criminal defendant, a fundamental tenet of our legal system. *See, e.g., Johnson v. State*, 227 Md. 159, 163, 175 A.2d 580 (1961).

At the outset of the trial, the jury was told, in the presence of the trial judge and counsel, that Wright pleaded guilty. That error stood uncorrected until after the jury had heard all the evidence and had actually begun to deliberate on its verdict. During the evidentiary phase of the trial, therefore, at least some jurors, having heard that Wright had pleaded guilty, particularly in view of the court's initial silence on the matter, may not have afforded Wright the presumption of innocence to which he was constitutionally entitled. In this regard, some jurors might have believed that notwithstanding Wright's guilty plea, the prosecutor nevertheless had to prove that Wright was

guilty. In the circumstances, it is not possible to know the effect upon the jury of Wright's supposed guilty plea as it evaluated the State's evidence of Wright's guilt, both before and after the corrective instruction was given.

Although the trial judge, after the clerk's error became manifest, made a valiant effort to "salvage the trial," we think the error so tainted the fairness of the trial as to require that Wright be afforded a new trial. Despite the court's clarifying instructions, we are unwilling to declare beyond a reasonable doubt that the error did not influence the jury's verdict. *See Dorsey v. State*, 276 Md. 638, 350 A.2d 665 (1976). Indeed, in a somewhat comparable situation, we have been unwilling to assume that judges are immune from the prejudicial effect of hearing that a guilty plea has been withdrawn. Maryland Rule 4–243(c)(5), applicable to plea agreements and to the withdrawal of guilty pleas, provides that upon objection, the judge to whom the guilty plea was presented cannot preside at a subsequent court trial in that case.

In *Brent v. State*, 63 Md.App. 197, 198, 492 A.2d 637 (1985), the Court of Special Appeals was called upon "to review the propriety of a trial judge's refusal to recuse himself after learning of a defendant's prior willingness to plead guilty, and having presided at guilty plea proceedings of his co-defendants, at which the trial judge heard statements of facts implicating the defendant." The court held "that the trial judge erred in refusing to grant the appellant's request that he recuse himself from presiding over the appellant's bench trial." 63 Md.App. at 208, 492 A.2d 637. It said that Rule 4–243(c)(5) "effectively acknowledges that once a judge has heard highly prejudicial proffers of the defendant's proposed guilty plea and the facts which support it, it is difficult for him or her to then render an impartial decision on the merits of the case at a bench trial." *Id.* at 204, 492 A.2d 637. The court quoted with approval language from a Pennsylvania case, the rationale of which we find applicable to the present case. There, the trial judge learned of the defendant's guilty plea during a

preliminary hearing. The court said that " '[t]here are times when evidence is so prejudicial that we cannot assume the trier of fact will be able to put the evidence aside and arrive at an impartial adjudication.' " *Id.* at 205, 492 A.2d 637, quoting *Commonwealth v. Conti,* 236 Pa.Super. 488, 495, 345 A.2d 238 (1975).

As we said in *Wilhelm v. State,* 272 Md. 404, 429, 326 A.2d 707 (1974), a request for a mistrial in a criminal case is addressed to the sound discretion of the trial court; a denial of the motion is reviewable on appeal after final judgment to determine whether there has been an abuse of the trial court's discretion. However, the decision by the trial court to deny the motion for a mistrial will not be reversed on appeal unless it is clear that there has been prejudice to the defendant. *See also* the extended discussion on the breadth and scope of a trial judge's discretion in *Mathias v. State,* 284 Md. 22, 26–29, 394 A.2d 292 (1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1996, 60 L.Ed.2d 375 (1979). Considering all the circumstances, we conclude that the trial judge abused his discretion in failing to declare a mistrial in this case. *See also Hunt v. State,* 312 Md. 494, 540 A.2d 1125 (1988).

## III.

In light of our holding that Wright must be afforded a new trial, we need not determine whether, as Wright contends, the trial court also erred in (a) admitting evidence that he used a false name subsequent to the commission of the crime and (b) in instructing the jury concerning the consciousness of guilt that accompanies the giving of a false name. But because these issues may arise again at the new trial, albeit on a record different than that now before us, we think it desirable to generally consider the applicable law on the subject.

The cases generally hold that evidence showing that the defendant used a false name to conceal his identity following the commission of a crime may, depending upon

the circumstances, constitute relevant evidence on the issue of consciousness of guilt. Among federal decisions so holding, *see, e.g., United States v. Eggleton,* 799 F.2d 378 (8th Cir.1986); *United States v. Guerrero,* 756 F.2d 1342 (9th Cir.1984); *United States v. Boyle,* 675 F.2d 430 (1st Cir.1982). The Court of Special Appeals has reached the same conclusion, *see Garrett v. State,* 59 Md.App. 97, 474 A.2d 931, *cert. denied,* 300 Md. 483, 479 A.2d 372 (1984); other state courts are in accord. *See, e.g., State v. Birchfield,* 1 Ariz.App. 436, 404 P.2d 97 (1965); *People v. Cramer,* 67 Cal.2d 126, 60 Cal.Rptr. 230, 429 P.2d 582 (1967); *Woodward v. State,* 197 Ga. 60, 28 S.E.2d 480 (1943); *People v. Schaffner,* 382 Ill. 266, 46 N.E.2d 989 (1943); *State v. Torphy,* 217 Ind. 383, 28 N.E.2d 70 (1940).

In *Davis v. State,* 237 Md. 97, 105, 205 A.2d 254 (1964), *cert. denied,* 382 U.S. 945, 86 S.Ct. 402, 15 L.Ed.2d 354 (1965), we quoted with approval from Wigmore, *Evidence* § 276 (3d ed. 1940) that "assumption of a false name, and related conduct," following the commission of a crime is admissible as evidence of consciousness of guilt. *Davis* recognized that while assumption of an alias is not the same as flight from justice, it is analogous conduct, *i.e.,* an intent to evade justice through concealment of one's true identity.[1]

As heretofore indicated, eight days after the Cainen robbery, Wright gave Officer Hardy, who was in plainclothes, a false name when the officer accosted him in a bar. At that time, Wright was being sought for offenses unrelated to the Cainen robbery. It is unclear from the record in this case whether Hardy was accompanied by two uniformed police officers when he asked Wright to identify himself. The record could be read to indicate that the uniformed officers were outside of the bar at that time. Nor is it clear

---

1. Evidence of flight has long been admissible to show consciousness of guilt in Maryland. *See, e.g., Hunt v. State,* 312 Md. 494, 540 A.2d 1125 (1988); *Huffington v. State,* 295 Md. 1, 452 A.2d 1211 (1982); *Jones v. State,* 242 Md. 323, 219 A.2d 77 (1966); *Tasco v. State,* 223 Md. 503, 165 A.2d 456 (1960), *cert. denied,* 365 U.S. 885, 81 S.Ct. 1036, 6 L.Ed.2d 195 (1961).

that Wright knew that Hardy was a police officer when he gave him the false name.

Of course, giving a false name to a stranger in a bar may be motivated by a variety of factors which are fully consistent with innocence. Thus, an unqualified jury instruction, as was given in this case, "that the assumption of a false name and its related conduct have *always* been deemed indicative of a consciousness of guilt" was too broad. (Emphasis added).

■ As to the admissibility of evidence of the use of a false name by a suspected criminal, this necessarily turns on the particular facts of the case, *i.e.*, whether, in the circumstances, alias evidence is relevant to show the defendant's consciousness of guilt for the offense charged. According to Wright, because he gave the false name in connection with crimes unrelated to that for which he was on trial, the use of an alias was in no way probative of his guilt of the Cainen robbery. Since Wright was suspected of multiple earlier crimes, and there was evidence that he had also robbed Cainen, the inference of a consciousness of guilt cannot, for the reasons given by Wright, be limited solely to the earlier offenses. *United States v. Boyle,* 675 F.2d 430 (1st Cir.1982) involved the use of an alias by a defendant on trial for bank robbery. As he was also suspected of committing earlier crimes, it was argued, as here, that alias evidence was not admissible to show a consciousness of guilt of the later offense. As to this argument, the court said:

"[I]t would be reasonable to infer from the use of an alias only some six days after the unmasked bank holdup that the defendant was seeking to conceal his true identity from police investigating this fresh crime. Certainly we find little to commend defendant's broad proposal to bar 'alias' evidence whenever a defendant has committed more than one crime. Under it, the more crimes a person commits using an alias, the less able the prosecutor would be to use the alias as evidence. Such a rule would ignore the substantial possibility that the defendant is using the

alias to evade detection for *all* of his crimes, including the one charged."

675 F.2d at 432–33 (emphasis in original).

We think *Boyle* correctly applies the applicable law.

Subject to other considerations governing the admissibility of alias evidence, we think an inference may arise of a consciousness of guilt where a suspected criminal uses a false name to conceal his true identity and this is so as to all crimes which that individual is suspected of having committed.

JUDGMENTS REVERSED; CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR A NEW TRIAL; COSTS TO BE PAID BY MONTGOMERY COUNTY, MARYLAND.