560 A.2d 577

Steven Tyrone PETTIE

v.

STATE of Maryland.

No. 73, Sept. Term, 1987.

Court of Appeals of Maryland.

July 7, 1989.

510

Gary S. Offutt, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued Before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

COLE, Judge.

In this case, Steven Tyrone Pettie contends that the trial court erred in excluding evidence that a police officer told the prosecuting witness not to alter his original accusation against Pettie or face criminal prosecution. Pettie argues that no foundation was required for admission of the officer's testimony. However, the Circuit Court for Washington County (Daniel W. Moylan, J., presiding) found and the Court of Special Appeals, *Pettie v. State*, 70 Md.App. 602, 522 A.2d 394 (1987) agreed that Pettie should have laid a proper foundation by cross-examining the prosecuting witness. We shall determine the correctness of that ruling and also whether evidence of Pettie's alleged attempted suicide was properly admissible as raising an inference of consciousness of guilt.

We first summarize the facts giving rise to these issues. While an inmate at the Maryland Correctional Training Center, Steven Tyrone Pettie was charged with committing various sexual acts upon another inmate, Robert Butts. Butts testified that at approximately 1:30 p.m. on December 19, 1984, Pettie entered Butts's cell, brandished a knife, and demanded that Butts submit to his sexual ultimatum. Under threat of the knife, Butts was sodomized. At approximately 5:10 p.m., Butts reported the assault (but not the sodomy) and sought protective custody. Penal authorities then placed Pettie on administrative segregation.

At trial, over Pettie's objection, correctional officer Donald Roy Hunter testified for the prosecution that at 10:40 p.m., less than six hours after the initial report, he was summoned to Pettie's cell by inmate Brian Priet, who had found an apparent suicide note. Hunter found Pettie lying face down on his bunk in a non-responsive but conscious state with a single horizontal cut to his left wrist approximately two inches in length and one eighth inch deep. The cut bled only slightly.

Nearly two months after the reported assault, Butts finally told prison authorities that he had been sodomized. After investigating Butts's claim, authorities brought charges against Pettie.

At trial, Pettie called a single witness, the investigating officer, Maryland State Police Trooper Harry V. Smith. Over the State's objection, Pettie sought to introduce a portion of Smith's report showing that Smith had warned Butts that if he decided to drop the charges or refused to testify in court that he would be charged with false statements to a police officer, perjury, and the false report of a crime. The circuit court declined to allow this evidence finding it irrelevant and proffered without foundation.

Pettie argues that no foundation should be required regarding Trooper Smith's testimony because the foundational requirement generally applies only to bias evidenced by comments or conduct of the witness to be impeached, not to

comments made to the witness by third parties. Here, Pettie argues, Butts is the target of the impeachment, not the maker of the prior statements. Pettie also alleges that by finding the Smith testimony irrelevant, the trial court precluded Pettie from requesting that the judge vary the order of proof and allow the foundation to be established later. Furthermore, Pettie contends, a foundation should not be required since the person called to testify, Trooper Smith, was the proponent of the contested statement and in fact was a more appropriate witness than Butts from whom to elicit this evidence of bias.

The State counters that the relevance of the statements by Trooper Smith cannot be proved absent a proper foundation. The State contends that Pettie should have cross-examined Butts concerning the warnings of Trooper Smith rather than question Smith directly.

Pettie also complains because the circuit court admitted evidence that he had attempted to commit suicide shortly after the alleged rape. Pettie maintains that given the many possible motivations for a suicide attempt, the prejudice engendered by admitting evidence of an attempted suicide far outweighs any marginal probative value the evidence might otherwise possess. The State, on the other hand, argues that the vast majority of courts have admitted evidence of attempted suicide as tending to show consciousness of guilt.

We agree with Petitioner that the statement made by Officer Smith was improperly excluded. It clearly was relevant and did not require a foundation. Furthermore, we find that the State did not meet its burden of proving a valid suicide attempt. For both of these reasons, we shall reverse.

I

We first address the foundation issue. There exists considerable conflict among state courts as to the applicability of the foundation requirement. Rulings have run the

gamut from requiring a foundation only where evidence is based upon the adverse witness' statements, *e.g., Baker v. Joseph,* 16 Cal. 173 (1860), to requiring a foundation only for prior contradictory statements, *e.g., Armijo v. People,* 134 Colo. 344, 304 P.2d 633 (1956); *Angelopoulos v. Wise,* 133 Colo. 133, 293 P.2d 294 (1956), to requiring a foundation only for "impeaching" evidence, *e.g., Alford v. State,* 47 Fla. 1, 36 So. 436 (1904).

Although no general rule is applicable in all circumstances, it is well established that the bias, hostility or motives of a witness are relevant and are admissible for purposes of impeachment. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Martens Chevrolet v. Seney,* 292 Md. 328, 439 A.2d 534 (1982). We require a party to lay a foundation by cross-examining the adverse witness, where the credibility of the witness is impeached by introducing prior inconsistent statements. In this context, requiring a foundation makes perfect sense for reasons of fairness "in order that the witness may be enabled to refresh his recollection in regard to such statements, and be afforded the opportunity of making such explanation as he may deem necessary and proper." *State v. Kidd,* 281 Md. 32, 46 n. 8, 375 A.2d 1105 *cert. denied, Maryland v. Kidd,* 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d 498 (1977). By cross-examining the witness as to prior statements he may have uttered, the witness is fairly alerted as to what proof he must garner to defend against the attack and is given the opportunity to call other witnesses or to prepare his answer. *Smith v. United States,* 283 F.2d 16 (6th Cir.1960), *cert. denied,* 365 U.S. 847, 81 S.Ct. 808, 5 L.Ed.2d 811 (1961). Also, if the witness is asked the time, place, and persons and circumstances involved in the purported conversation, he may admit, deny, or explain the situation. *People v. Payton,* 72 Ill.App.2d 240, 218 N.E.2d 518 (1966); 81 Am.Jur.2d § 562. In short, the first articulated rationale for the foundation requirement is the avoidance of surprise.

A second reason for requiring a foundation is "the saving of time by making unnecessary the extrinsic evidence [of

bias]." *McCormick On Evidence*, § 40 (3d ed. 1984). The foundational cross-examination of the adverse witness saves considerable time in the conduct of trials, for, if evidence of a witness' bias is adduced and on cross-examination he admits the allegations, no more evidence need be presented, and the proceeding may continue. *State v. Murphy*, 59 Haw. 1, 575 P.2d 448, 459–60 (1978).

The Second Circuit in *United States v. Harvey*, 547 F.2d 720 (2d Cir.1976), likewise held that a proper foundation must be laid before extrinsic evidence of bias is introduced. Apparently tempering the rule imposed, however, that court clarified that:

Although the scope of a defendant's right to introduce evidence of bias is not limitless, and may be restricted as the trial court in its sound discretion deems proper, *it is rarely proper to cut off completely a probative inquiry that bears on a feasible defense.* *"(A) defendant should be afforded the opportunity to present facts which, if believed, could lead to the conclusion that a witness who has testified against him either favored the prosecution or was hostile to the defendant.* Evidence of all facts and circumstances which 'tend to show that a witness may shade his testimony for the purpose of helping to establish one side of a cause only,' should be received...."

547 F.2d at 723. (Emphasis added) (citations omitted).

■ The necessity for being fair to the witness and affording him the chance to explain allegations against him is especially significant where the witness' general credibility is attacked. *Fincher v. The State*, 58 Ala. 215 (1877). Where a witness is impeached by evidence showing that he has made prior inconsistent statements, for example, in essence he is charged with lying or with committing an act virtually akin to perjury. A witness under such accusatory pressure should fairly be allowed to rebut that charge. *See State v. Smith*, 44 S.D. 305, 183 N.W. 873 (1921).

■ On the other hand, where a party seeks merely to challenge the accuracy of the witness' testimony in the particular case by pointing to facts tending to show the witness' bias, the witness' attention need not be directed to those facts. *Id.* at 308, 183 N.W. 873. While evidence of what a witness previously has stated is desirable in the form of his own testimony elicited on cross-examination, *Davis v. Ivey,* 93 Fla. 387, 112 So. 264, *cert. denied, Mellon v. Ivey,* 275 U.S. 526, 48 S.Ct. 19, 72 L.Ed. 407 (1927), evidence of his hostility or bias accurately may be conveyed by other competent witnesses called to testify concerning the circumstances. *Id.; Fincher, supra,* 58 Ala. at 219–20; 87 ALR2d 407, 409, § 1. *See also Wintjen v. State,* 398 A.2d 780, 782 (Del.Sup.1979) ("The possible bias of a witness is always a relevant inquiry, and a cross-examiner need not lay a foundation to explore it."); *Clayton v. Freehold Township Board of Education,* 67 N.J. 249, 337 A.2d 361, 363 (1975) ("[B]ias of a witness may be shown by extrinsic evidence without the necessity for prior cross-examination of the witness."); *State v. Kehn,* 50 Ohio St.2d 11, 361 N.E.2d 1330, 1335 (1977), *cert. denied, Kehn v. Ohio,* 434 U.S. 858, 98 S.Ct. 180, 54 L.Ed.2d 130 (1977) ("The impeachment of a witness by showing bias or prejudice does not require the foundation necessary for impeaching a prior inconsistent statement...."); *cf. United States v. White,* 225 F.Supp. 514, 519–21 (D.D.C.1963), remanded, *White v. United States,* 349 F.2d 965 (D.C.App.1965) (a *fact* suggesting bias does not require cross-examination, but a *statement* by a witness does); *State v. Shaw,* 93 Ariz. 40, 378 P.2d 487, 489 (1963) (foundation requirement dispensible if unduly burdensome and if fairness maintained); *Territory of Hawaii v. Yadao,* 35 Haw. 198 (1939) (bias may be shown through cross-examination or any other evidence); *Barraclough v. Union Pac. R. Co.,* 331 Mo. 157, 52 S.W.2d 998, 1001–02 (Mo.1932) (foundation rule applies only to utterances not to conduct or circumstances); *People v. Lane,* 194 N.Y.S.2d 846, 847–48, 9 A.D.2d 979 (3d Dept.1959) (bias may be shown by any competent evidence); *People v. Brooks,*

131 N.Y. 321, 30 N.E. 189 (1892) (contradiction of witness distinguished from bias evidence); *Caffery et ux. v. Phila. & R. Ry. Co.*, 261 Pa. 251, 256, 104 A. 569 (1918) (no foundation required for bias evidence); *State v. Wilder*, 4 Wash.App. 850, 486 P.2d 319, 322–23 (1971), *review denied*, 79 Wash.2d 1008 (1971) (no foundation needed for showing bias if relevant to valid defense).

■ Evidence of a witness' prejudice or bias, intended only to "discredit" him by weakening his believability in the particular case in which he is examined differs in character from evidence introduced to "impeach" the witness or destroy his general credit. *Barraclough, supra*, 52 S.W.2d at 1001–02; 87 ALR2d 407, § 1. Evidence of bias is best described as "discrediting," not "impeaching" evidence. *Ellsworth v. Potter*, 41 Vt. 685, 690 (1869). When the former type is offered, a party does not convey to the court that the witness' oath to tell the truth should not be believed, but rather that:

> the witness' testimony in that particular case is not to be taken at face value or given full credit, not because the witness is deliberately lying, but because his bias or prejudice has, perhaps unconsciously, colored his testimony.... [H]is testimony, though not false, is slanted by his feelings in favor of one party or against the other, [and] it must be taken with several grains of salt."

87 ALR2d 407, 411, § 1.

The foregoing analysis logically applies to the facts of this case. Pettie sought to introduce the report of the officer investigating Butts's claim, and then to call the officer to authenticate the document. The best evidence of the officer's warning statement was that proffered by Petitioner and subsequently excluded by the trial judge.

To require Petitioner to lay a foundation before that evidence was admitted and to cross-examine the witness would serve none of the articulated reasons for the foundation rule. First, the officer's statement obviously was admissible as tending to show the witness' bias or possible

questionable motives for testifying. *Marten's Chevrolet, supra,* 292 Md. 328, 439 A.2d 534. Second, fairness to the witness was not forfeited. There was no impeachment of the general credibility of the witness nor an attempt to show that the witness "should not be believed under oath." The evidence was intended to challenge the accuracy of the witness' testimony by suggesting that any desire to recant his original charge would be chilled by the threat of police action. Calling Butts for cross-examination would have added nothing to the inquiry, and was unnecessary to avoid surprising him. In theory and in fact, there was nothing for the witness to rebut.

Furthermore, cross-examining Butts would not have "sav[ed] time by making unnecessary the extrinsic evidence," McCormick, *supra,* § 40, nor promoted expediency in the conduct of the trial. *State v. Murphy, supra,* 575 P.2d at 459; *State v. Shaw, supra,* 378 P.2d at 489. On the contrary, it further would have protracted the trial by necessitating debate concerning the effect of the warning upon the witness. Thus, the second reason for requiring a foundation, to promote judicial economy, is inappropriate under these facts.

We therefore conclude that the Court of Special Appeals improperly affirmed the exclusion of the evidence of bias since neither rationale for the foundation requirement—avoidance of surprise nor judicial economy—warrants applying the rule to this case.

## II

■ We next address whether the circuit court improperly admitted evidence of Pettie's attempted suicide. Pettie argues that evidence of attempted suicide has at best slight probative value in light of the numerous factors which may motivate a person to take his own life. According to Pettie, admitting this evidence is particularly questionable in the case of a prison inmate who is constantly subjected to jail-life stress and to the deprivation of his freedom. Pettie warns that the issue of a defendant's guilt or innocence in

this case will be submerged in the evidence produced describing the reasons the defendant committed the alleged acts. Such an inquiry, Pettie argues, is collateral to the primary issues involved.

As a general matter, evidence of conduct of the accused subsequent to the charged criminal offense is admissible if probative of culpability. *See* 29 Am.Jur.2d, *Evidence* § 278. Evidence has been admitted which tends to show the accused resisted arrest, *Bird v. United States*, 187 U.S. 118, 23 S.Ct. 42, 47 L.Ed. 100 (1902); took to flight or concealment prior to arrest, *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); escaped or attempted to escape from custody, *Hunt v. State*, 312 Md. 494, 540 A.2d 1125 (1988); attempted suicide, *State v. Campbell*, 146 Mont. 251, 405 P.2d 978 (1965); possessed weapons, *People v. Northcott*, 209 Cal. 639, 289 P. 634 (1930); possessed stolen property, *State v. Barnes*, 47 Or. 592, 85 P. 998 (1906); suppressed or destroyed evidence, *Hickory v. United States*, 160 U.S. 408, 16 S.Ct. 327, 40 L.Ed. 474 (1896); concealed his identity, *Wright v. State*, 312 Md. 648, 541 A.2d 988 (1988); or engaged in similar conduct. *See* Wigmore, *Evidence* § 276 (3d ed. 1940).

Under Maryland law, evidence of a defendant's flight is admissible, not as conclusive of guilt, but as a circumstance tending to show a consciousness of guilt. *Wright v. State, supra*, 312 Md. 648, 541 A.2d 988; *Hunt v. State, supra*, 312 Md. 494, 540 A.2d 1125; *Davis v. State*, 237 Md. 97, 205 A.2d 254 (1964), *cert. denied, Davis v. Maryland*, 382 U.S. 945, 86 S.Ct. 402, 15 L.Ed.2d 354 (1965); *Westcoat v. State*, 231 Md. 364, 190 A.2d 544 (1963).

As we see it, however, attempted suicide cannot easily be circumscribed, as that act is subject to innumerable interpretations. Even if we were to agree that evidence of attempted suicide is admissible as analogous to flight and implies a consciousness of guilt (and we do not decide that issue), the facts here simply do not support the conclusion

that Pettie tried to kill himself at all, much less that he did so as a reaction to any attack on or sodomy of Butts.

First, Officer Hunter testified that he had been summoned to Pettie's cell by inmate Priet, who had found an alleged suicide note authored by Pettie. That note, however, was neither admitted nor offered as an exhibit, and thus is unavailable to corroborate the State's suicide theory. Assuming that that note was unavailable to the State during the trial, inmate Priet could have been called to testify as to its contents. He was not.

The evidence shows that Pettie lay on his bunk face down in a non-responsive but conscious state with a single horizontal cut to his left wrist approximately two-inches long and one eighth inch deep, that cut bleeding only slightly. Curiously, no implement with which he may have slashed his wrist was found in Pettie's hand, or even in his cell. The State avers only that Pettie had "something to cut his wrist with." However, it would have taken considerable forethought and courage for a "dying" man to attempt suicide and then dispose of the suicide weapon. In our view, it is equally plausible, given the State's lack of evidence, that Pettie feigned attempted suicide to invite mitigation in the sentence he then served.

Also admitted into evidence were several letters written by Pettie to Butts in which Pettie offered Butts "protection" in return for continued "friendship." Nothing in those letters, however, suggested a suicidal disposition.

We thus decline to reach the issue whether evidence of attempted suicide is admissible to show consciousness of guilt. We simply are not persuaded that the State met its burden to produce convincing evidence showing first that there was a valid suicide attempt at all and consequently, that the attempt here was motivated by a consciousness of guilt. In short, the evidence proffered by the State to show consciousness of guilt is not probative, and may be characterized as equivocal.