# IN THE SUPREME COURT OF TENNESSEE
# AT KNOXVILLE
January 9, 2019 Session

## STATE OF TENNESSEE v. QUINTIS McCALEB

**Appeal by Permission from the Court of Criminal Appeals
Criminal Court for Hamilton County
No. 294000   Barry Steelman, Judge**

---

## No. E2017-01381-SC-R11-CD

---

We granted permission to appeal to determine whether the Court of Criminal Appeals misapplied the standard of review applicable to trial court decisions to admit or exclude evidence.  In this case, the trial court determined that the defendant's statements during a post-polygraph interview were inadmissible pursuant to Tennessee Rule of Evidence 403. On interlocutory appeal, the Court of Criminal Appeals concluded that the trial court abused its discretion by excluding the statements.  The Court of Criminal Appeals reversed the trial court's ruling and remanded the matter for further proceedings.  We granted the defendant's application for permission to appeal.  We now hold that the Court of Criminal Appeals erred when it concluded that the trial court abused its discretion. Accordingly, we reverse the judgment of the Court of Criminal Appeals and remand this matter to the trial court for further proceedings consistent with this opinion.

### Tenn. R. App. P. 11 Appeal by Permission;
### Judgment of the Court of Criminal Appeals Reversed;
### Case Remanded to the Trial Court

JEFFREY S. BIVINS, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Courtney N. Orr, Assistant Attorney General; Neal Pinkston, District Attorney General; and Leslie Ann Longshore, Assistant District Attorney General, for the appellee, the State of Tennessee.

Steve E. Smith, District Public Defender, and Joseph Lodato, Assistant District Public Defender, Chattanooga, Tennessee, for the appellant, Quintis McCaleb.

# OPINION

## Factual and Procedural Background

Quintis McCaleb ("the Defendant") was charged with committing one count of aggravated sexual battery, Tenn. Code Ann. § 39-13-504(a)(4) (2014), and two counts of rape of a child, id. § 39-13-522(a) (2014), all on or before October 2, 2014. These charges arose from allegations made by a minor female.

Upon learning of the allegations, the Defendant agreed to take a polygraph examination. The examination and ensuing interview, both conducted by Sergeant Malcolm Kennemore of the Chattanooga Police Department, were videotaped. In response to repeated assertions by Sergeant Kennemore that the polygraph indicated that his denials were false, the Defendant made some incriminating statements. The Defendant subsequently was indicted.

The Defendant filed a motion to suppress the video of the post-polygraph interview as well as any testimony "relating to" the interview. Evidence and argument on the motion were adduced at two hearings, the first in December 2016, and the second in March 2017.

At the first hearing, the Defendant and the State agreed that the video of the polygraph examination itself could not be shown to the jury. The State asserted that it intended to offer "the video of the post-polygraph interview" while acknowledging that "there may be a need for redaction of certain things," including the interrogating officer's many references to the polygraph examination and its alleged results. The State claimed that "there are a couple of starting points [in the video] that the State believes would make sense, that we could start just at that point and go forward with minimal chopping up after that." However, the State made no proffer of a redacted version of the video recording. Rather, the video of the entire meeting between the Defendant and Sergeant Kennemore was made an exhibit to the hearing. Only that portion of the video memorializing the post-polygraph interview was viewed by the trial court, however.[1] We

---

[1] In its brief to this Court, the State refers to videotaped content that preceded the post-polygraph interview. Because the record contains no indication that the trial court reviewed this content, these references are inappropriate. See Tenn. R. App. P. 13(c) ("The Supreme Court . . . may consider those facts established by the evidence in the trial court and set forth in the record . . . ."); Cole v. Clifton, 833 S.W.2d 75, 78 (Tenn. Ct. App. 1992) ("As an appellate court, we are limited in our review to facts in the record considered by the trial court and, therefore, we are not in a position to consider the effect of evidence not before the trial court at the time of its decision.").

summarize here those portions of the video reviewed by the trial court that are relevant to the issue before us.[2]

The post-polygraph interview began with Sergeant Kennemore telling the Defendant,

> Quintis, I'm, I'm going through the polygraph charts, evaluating them, and it's obvious that something happened with you and her. We're going to get through this, though, okay? We're, we're going to sort this out and figure out what's going on there, okay? But it's obvious that some kind of contact like this happened with you and her.
>
> When I asked you those questions specifically about, like, "Did you touch her bare vagina?" "Did she touch your bare penis?" It's obvious there's something happening there, that something occurred with that, so I'm going to help you through this. We'll work this out, okay?

A short time later, Sergeant Kennemore said, "Tell me specifically what happened with her. Now, again, I—doing the polygraph charts, I see something happened with her." Asked again, "[W]hat happened with her?", the Defendant responded, "I can't, I can't find nothing that I can remember me doing." Sergeant Kennemore then said,

> Well, let me be real clear, okay? The polygraph, it doesn't get into your subconscious or anything like that. It doesn't look at anything that you're not thinking about right now. It doesn't have that capability. I can't do that. I can't get into your subconscious mind. All I can do with a polygraph is look at [it] and say, ask you specific questions and say[,] "You're thinking about something with that question," okay? Are you thinking about it right now? And that's obviously that you are.
>
> I'm going to ask you the question, for instance, "Did you touch that girl's bare vagina?" I can tell without any question whatsoever that, yeah, you did. I can tell it with a polygraph. There's no question at all in my mind with that.
>
> You know, when I, when I say, "Did you do that while at your residence?" Yeah, abs—there's no question. I can tell that with the polygraph. I can see it on the, the charts there as I look at the charts on the computer screen. When I print out the charts, I do a—I can see it on the charts themselves when I print these charts. It's not just my judgment,

---

[2] A transcript of the post-polygraph interview also was admitted into evidence as another exhibit, and we have relied upon that transcript for the following quotations.

okay? In the whole mathematical scoring rhythm that I do with these; right? I've been doing this for years, okay? It's a whole mathematical process and you come out with plus and minus numbers, basically. When you get down here to the bottom, this is what really is concerning.

It's a minus 9 is what this comes out. I'm not going to try and confuse you with all this because it gets very complicated, but I will show you that when it shows a minus nine, you go over here and you look at this and say, "What does that mean?" All right. If you look in this area right here, minus three or any less (unintelligible) or minus in these numbers as a grand total, that means deception indicated, so it shows that you were being deceptive about these questions.

. . . .

This is a computer printout. It says "deception indicated. Probability of deception is greater than 99 percent." And it never says a hundred. It's programmed with that.

The Defendant responded to these assertions by saying, "I have no idea. I wish I could tell you. I, I put this on my life, I wish I could tell you what happened. I just don't know." Sergeant Kennemore then said, "Well, Quintis, I can say with a polygraph that you absolutely do know, okay? I can, I can say that without question, okay?"

Sergeant Kennemore then told the Defendant,

If you leave here without us talking about this and without us really getting down from your part what happened and that kind of thing with this girl, okay? If you leave here with that, what I'm going to have to do is write a report and send it over to Detective Bell, and all he does is this type of investigation. That's his full-time job as well. I'm going to have to write a report that says, "I asked him these questions you wanted to know the answer to, and yes, he absolutely did this with this girl. He was lying to me, and he did this with this girl." That's the way it is. That's all I can write, okay?

And I can write down and say, "I asked him these questions and he did it, he absolutely did it," and that's all he's going to look at; nothing else, okay?

A short time later, Sergeant Kennemore stated, "I can't look at the polygraph and say 'he doesn't know what happened.' All I can do is say, 'Listen, man, he does know what happened.' And it's obvious you know what happened with her, okay?" Sergeant

4

Kennemore subsequently told the Defendant, "[W]hat I can tell from the polygraph is that you absolutely do remember touching her vagina. I mean, there is no question about that."

A short time later, Sergeant Kennemore said, "Let's just start step by step, okay? And I know you remember this, okay, so please don't tell me you don't remember, all right? Because it's obvious that you do." Subsequently, Sergeant Kennemore said, "I can say for sure—because I just did this polygraph—I can say without any question that you remember touching her bare vagina. I can say for sure that you remember her touching your bare penis, okay? I can say those without any question whatsoever." Sergeant Kennemore later warned the Defendant, "We don't want to go to court and, and say, 'Listen, Judge, this is what happened, I can tell you what happened and this is it,' okay? Just like that, and say, he, he, 'He said nothing happened, he's not saying anything.'"

In total, Sergeant Kennemore spoke the word "polygraph" fifteen times during the course of the post-polygraph interview.[3] Eventually, the Defendant admitted that the minor female had touched his penis and that he had touched her vagina.

In addition to repeatedly referring to the polygraph examination, Sergeant Kennemore referred numerous times to the alleged victim's accusations and also spoke with the Defendant about past sexual abuse the Defendant had suffered.[4]

At the first hearing, the Defendant argued that allowing the jury to see only those portions of the interview that did not include the officer's references to the polygraph would violate the "rule of completeness" and also, more significantly, would violate his constitutional rights. Defense counsel also speculated that the State would not be prejudiced by excluding the video because the officer himself could testify so long as he did not refer to the polygraph. The court responded that it was "interested maybe in hearing more from you at a later time about the . . . possibility that the jury won't be able to consider these statements in the context if part of it is redacted."

---

[3] The entire post-polygraph interview lasted approximately forty-six minutes.

[4] The victim's accusations were subject to being challenged as inadmissible hearsay. See Tenn. R. Evid. 802; Ruff v. State, 978 S.W.2d 95, 98 (Tenn. 1998) (holding that investigator's testimony about child victim's statements concerning sexual acts defendant committed upon her was "hearsay not admissible under any hearsay exception"). Any prior sexual abuse suffered by the Defendant was also subject to being challenged as inadmissible on the grounds of irrelevance. See Tenn. R. Evid. 402; Hathcock v. State, 447 S.E.2d 104, 107 (Ga. Ct. App. 1994) (holding that "testimony . . . that defendant was abused as a child was irrelevant to the question of whether he committed the crime of child molestation").

The Defendant also argued that the officer's frequent references to the polygraph examination during the post-polygraph interview rendered the Defendant's incriminating statements coerced and involuntary and, therefore, inadmissible. Proof on this point was adduced at the second hearing through the testimony of Sergeant Kennemore.

Sergeant Kennemore described his position with the Chattanooga Police Department as "the polygraph examiner and psychological advisor." He described his training as a polygraph examiner. He then reviewed the consent forms the Defendant signed regarding the polygraph examination as well as the Defendant's written waiver of his Miranda rights. These documents were admitted into evidence. Sergeant Kennemore testified that the polygraph examination began at 1:25 p.m. on October 27, 2014, at the Chattanooga Police Department. The Defendant arrived with his parents and was not under arrest. Sergeant Kennemore learned that the Defendant was nineteen years old, had completed the eleventh grade, and was home-schooled. Sergeant Kennemore confirmed that the entire interview had been videotaped.

The State did not examine Sergeant Kennemore about the Defendant's incriminating statements. Rather, most of the questions directed to Sergeant Kennemore by both the State and the defense involved the process of the polygraph examination and the post-polygraph interview.[5]

The trial court took the matter under advisement and issued its ruling from the bench several weeks later. Initially, the trial court determined that the Defendant's statements during the post-polygraph interview were voluntary. Accordingly, the Defendant was not entitled to the suppression of his statements on the basis that they were coerced and, therefore, obtained in violation of his constitutional rights. However, the trial court then ruled as a matter of law under the Tennessee Rules of Evidence that the Defendant's statements should not be admitted:

> And so then that gets us to [Tennessee Rule of Evidence] 403, and the defendant's responses to questions, although relevant and although they

---

[5] Additionally, in response to a question by the prosecutor, Sergeant Kennemore stated that he had asked for the Defendant's opinion about the type of person that would sexually assault a child and that the Defendant had responded "he felt it would be someone with a history of being a victim of sexual abuse themselves." In response to a follow-up question, Sergeant Kennemore added that he had asked the Defendant if he had been a victim of a sexual assault, but he did not describe the Defendant's reply. Defense counsel asked Sergeant Kennemore if the Defendant ever admitted that he "was being dishonest" or that he "had lied to [him] initially," to which Sergeant Kennemore responded, "I don't remember the specific wording that he used." Sergeant Kennemore added, "He did eventually—in the interview, he did eventually tell me what the actual facts that had occurred during this incident." Sergeant Kennemore did not describe what he considered "the actual facts" to be. Asked whether the video recording reflected that the Defendant "did make certain admissions," Sergeant Kennemore answered, "Yes, that's correct." Then asked whether the Defendant "repeatedly denied there being any oral sex between the victim and himself," Sergeant Kennemore responded, "I believe he did say that she did not conduct oral sex on him."

6

have some probative value, the probative value does not get the statements admitted if the probative value is substantially outweighed by the danger of unfair prejudice. And where our courts have ruled that polygraph examinations and the results of those examinations are inherently untrustworthy, that they're not probative, the fact that the defendant would need to refer to the polygraph examination in order to explain the context of his statements so that the jury could fully understand his statements and why he may have said what he did, that creates a danger, a high danger of unfair prejudice, because a jury might speculate about the results of the polygraph, and our courts have found that polygraph results are not probative.

So under Rule 403, evidence of the defendant's statements, even though voluntary, should not be admitted because the probative value of any statement would be substantially outweighed by the danger of the unfair prejudice that would come from the jury being aware that those statements were made post-polygraph, so the Court will suppress any statement of the defendant secured by Officer Kennemore and will not allow the presentation of such in the State's case-in-chief.

In response to a question by defense counsel, the trial court made clear that its ruling applied not only to the videotape of the interview but also to any testimony by Sergeant Kennemore about the content of the interview.

The State sought and obtained an interlocutory appeal. On review, the Court of Criminal Appeals held that the trial court had abused its discretion in ruling inadmissible the Defendant's statements made during the post-polygraph interview. State v. McCaleb, No. E2017-01381-CCA-R9-CD, 2018 WL 2465143, at *4 (Tenn. Crim. App. June 1, 2018), perm. app. granted (Tenn. Sept. 13, 2018). Accordingly, the Court of Criminal Appeals reversed the trial court's decision and remanded the matter for further proceedings. Id. at *5. This Court subsequently granted the Defendant's application for permission to appeal.

## Standard of Review

Although this matter arises from the Defendant's motion to suppress, the trial court's grant of that motion was grounded on an evidentiary ruling rather than on a constitutional basis. Therefore, the appropriate standard of review on direct appeal is whether the record clearly demonstrates that the trial court abused its discretion in ruling the evidence inadmissible. See, e.g., Regions Bank v. Thomas, 532 S.W.3d 330, 336 (Tenn. 2017); State v. Davis, 466 S.W.3d 49, 61 (Tenn. 2015).

7

This Court has described the abuse of discretion standard of review as follows:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. Thus, it does not permit reviewing courts to second-guess the [trial court] . . . or to substitute their discretion for the [trial] court's. The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny.

> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

> To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions.

Lee Med., Inc. v. Beecher, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted).

We emphasize that the abuse of discretion standard of review does not permit an appellate court to substitute its judgment for that of the trial court. State v. Harbison, 539 S.W.3d 149, 159 (Tenn. 2018). Rather, "[b]ecause, by their very nature, discretionary decisions involve a choice among acceptable alternatives, reviewing courts will not second-guess a trial court's exercise of its discretion simply because the trial court chose an alternative that the appellate courts would not have chosen." White v. Vanderbilt Univ., 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999). Accordingly, if the reviewing court determines that "reasonable minds can disagree with the propriety of the decision," the decision should be affirmed. Harbison, 539 S.W.3d at 159.

## Analysis

*Rules of Evidence*

We begin with a brief sequential review of the pertinent evidentiary rules, recognizing first and foremost that the Tennessee Rules of Evidence are "designed to assure fairness and reliability in the criminal trial process." State v. Flood, 219 S.W.3d 307, 316 (Tenn. 2007) (citing Chambers v. Mississippi, 410 U.S. 284, 302 (1973)). Our Rules of Evidence frequently mirror the Federal Rules of Evidence. Therefore, we often look to the construction of analogous Federal Rules of Evidence for guidance in the construction of our own Rules. See, e.g., Walsh v. State, 166 S.W.3d 641, 648 n.3 (Tenn. 2005). Moreover, we agree with our federal counterparts that "the ultimate goals of the rules of evidence are best served by not reading any rule in isolation." United States v. Smith Grading & Paving, Inc., 760 F.2d 527, 531 (4th Cir. 1985); see also, e.g., United States v. Opager, 589 F.2d 799, 802 (5th Cir. 1979) ("We believe that the ultimate purpose of the rules of evidence should not be lost by a rigid, blind application of a single rule of evidence. Individual rules of evidence . . . should not be read in isolation, when to do so destroys the purpose of ascertaining the truth." (quoting United States v. Batts, 558 F.2d 513, 517 (9th Cir. 1977))).

Tennessee Rule of Evidence ("Rule") 102 states that "[t]hese rules shall be construed to secure the just, speedy, and inexpensive determination of proceedings." Rule 106 provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." We have construed this "rule of completeness" as being intended to ensure that the jury can assess related information without being misled by considering only portions of an item of evidence. See State v. Hartman, 42 S.W.3d 44, 61 (Tenn. 2001); see also, e.g., Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 171 (1988) (holding that the analogous federal rule of completeness is designed "to secure for the tribunal a complete understanding of the total tenor and effect of the utterance" (quoting 7 J. Wigmore, Evidence in Trials at Common Law § 2113, p. 653 (J. Chadbourn rev. 1978))). As described by Tennessee Law of Evidence, Rule 106

> reflects a concern for fairness and is designed to let the jury assess related information at the same time rather than piecemeal. This should help the jury avoid being misled by hearing only partial information about a writing or recorded statement. Moreover, it will assist the jury in assessing the weight to be given to the written or recorded statement by permitting the jury to consider at the same time other relevant writings and recordings.

9

Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, Tennessee Law of Evidence §
1.06[2][a] (6th ed. 2011 LexisNexis Matthew Bender) (footnotes omitted) (hereinafter
"Tennessee Law of Evidence").

This Court previously has considered the impact of Rule 106 on the prosecution's
use of a criminal defendant's statement:

> In our view, Rule 106 reflects the concern for fairness found in cases
> such as Espitia[v. State, 288 S.W.2d 731, 733 (Tenn. 1956)]—that the trier
> of fact be permitted to assess related information without being misled by
> hearing only certain portions of evidence. Accordingly, it appears that
> where the prosecution introduces a statement made by the defendant, the
> trial court may in the interest of fairness order that the remainder of the
> statement be admitted as well under Rule 106. Indeed, it would not be
> consistent with fundamental fairness to allow the prosecution to introduce
> only the most incriminating portions of a defendant's statement without
> regard to the overall context or relevant exculpatory portions found in the
> same statement. As Espitia indicates, the jury is to determine which
> statements to accredit.

State v. Keough, 18 S.W.3d 175, 182 (Tenn. 2000) (citation omitted).

Rule 401 states, "'[r]elevant evidence' means evidence having any tendency to
make the existence of any fact that is of consequence to the determination of the action
more probable or less probable than it would be without the evidence." Certainly, a
criminal defendant's admissions that he engaged in the criminal conduct with which he is
charged meet the definition of relevant evidence. See, e.g., State v. Zirkle, 910 S.W.2d
874, 886 (Tenn. Crim. App. 1995) ("That the defendant admitted to a fellow inmate he
had killed someone with a crowbar was highly probative on the issue of defendant's
guilt."); see also Arizona v. Fulminante, 499 U.S. 279, 296 (1991) (White, J., dissenting)
(recognizing that a defendant's confession "is probably the most probative and damaging
evidence that can be admitted against him" (quoting Bruton v. United States, 391 U.S.
123, 139 (1968))).

Rule 402 provides that "[a]ll relevant evidence is admissible except as provided by
the Constitution of the United States, the Constitution of Tennessee, these rules, or other
rules or laws of general application in the courts of Tennessee. Evidence which is not
relevant is not admissible." Rule 402 recognizes that relevance is not the only criterion
that proffered proof must satisfy to be deemed admissible. Thus, even if evidence is
extremely relevant to an issue in a criminal prosecution, it may be excluded if, for
example, the evidence was obtained during an unconstitutional search. See, e.g., State v.
Richards, 286 S.W.3d 873, 882 (Tenn. 2009) (upholding suppression of evidence seized

10

during warrantless search of defendant's person because search was not supported by probable cause to arrest defendant).

Rule 403 offers additional grounds for the exclusion of relevant evidence: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Substantively indistinguishable from our Rule 403, Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Advisory Committee's Notes to Federal Rule 403 advise that the term "unfair prejudice" "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." In State v. Banks, 564 S.W.2d 947, 951 (Tenn. 1978), this Court adopted this definition of "unfair prejudice" even before the promulgation and adoption of the Tennessee Rules of Evidence in 1989.[6]

As Tennessee Law of Evidence recognizes, Rule 403

represents a codification of the common law principle that a judge has the inherent authority to exclude relevant evidence that would . . . threaten the fairness of the trial process. . . .

The theoretical underpinning of the rule is based on the principle that some evidence, even though relevant, should not be admitted because doing so would violate the more important value[] of . . . facilitating a fair trial. In other words, Rule 403 assumes that logical relevance is only one value and not always the most important value at stake in deciding whether evidence should be admitted.

. . . .

In general terms, Rule 403 permits a court to exclude relevant evidence if the probative value of that evidence is substantially outweighed by the dangers of an unfair trial . . . . Thus, in assessing whether evidence should be excluded under Rule 403, the trial judge must carefully balance competing, important values.

---

[6] See S. Res. 4, 96th Gen. Assemb., 1st Reg. Sess. (Tenn. 1989) (ratifying and approving the Tennessee Rules of Evidence); H. Res. 10, 96th Gen. Assemb., 1st Reg. Sess. (Tenn. 1989) (same).

Tennessee Law of Evidence § 4.03[2], [3]; see also State v. Thacker, 164 S.W.3d 208, 227 (Tenn. 2005) (recognizing that "a trial court has the discretion to exclude any evidence that would render the trial fundamentally unfair, or whose probative value is outweighed by its prejudicial effect" (citing Tenn. R. Evid. 403; State v. Burns, 979 S.W.2d 276, 282 (Tenn. 1998))); Burns, 979 S.W.2d at 282 (stating that "any evidence that threatens to render the trial fundamentally unfair or poses a risk of unfair prejudice may violate the due process provisions of the United States and Tennessee Constitutions and must be excluded" (citing State v. Nesbit, 978 S.W.2d 872, 891 (Tenn. 1998))).

*Polygraph Examinations*

A brief review of our rulings regarding the admissibility of proof about polygraph examinations also will be helpful to our resolution of the matter before us. As we emphasized in State v. Damron,

> Tennessee courts have held repeatedly that polygraph test results, testimony concerning such results, and testimony concerning a defendant's willingness or refusal to submit to a polygraph test are inadmissible. State v. Pierce, 138 S.W.3d 820, 826 (Tenn. 2004) (citing cases). This general rule stems from relevancy and reliability concerns. Tennessee Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible." Because polygraph evidence is not considered reliable, it is irrelevant. Pierce, 138 S.W.3d at 826. Therefore, polygraph evidence, which includes polygraph test results, testimony concerning such results, and testimony concerning a defendant's willingness or refusal to submit to a polygraph test, is not admissible. Id.

151 S.W.3d 510, 515-16 (Tenn. 2004) (footnote omitted); see also, e.g., State v. Sexton, 368 S.W.3d 371, 409 (Tenn. 2012) (reiterating that "polygraph evidence is inadmissible" because polygraph results "are inherently unreliable" and, therefore, irrelevant); State v. Torres, 82 S.W.3d 236, 252 n.20 (Tenn. 2002) (stating that polygraph test results and the circumstances surrounding the taking of a polygraph are not admissible because "[p]olygraph results are inherently unreliable and inadmissible"); State v. Hartman, 42 S.W.3d 44, 60 (Tenn. 2001) (reaffirming that polygraph "results are inherently unreliable and not admissible to establish the defendant's guilt"); State v. Land, 681 S.W.2d 589, 592 (Tenn. Crim. App. 1984) (expressing concern that polygraph evidence "is dangerous in that it could easily convict the innocent or acquit the guilty").

In addition to being unreliable, the results of polygraph examinations also suffer, perhaps counterintuitively, from a simultaneous "tendency to be unduly persuasive." Banda v. State, 727 S.W.2d 679, 681 (Tex. Ct App. 1987). Thus, various courts have expressed concern that "juries might use evidence about polygraphs, a test viewed by courts as unreliable, as highly relevant and persuasive regarding a person's credibility as

12

related to the defendant's guilt." Odom v. State, No. 09-14-00070-CR, 2015 WL 7300603, at *5 (Tex. Ct. App. Nov. 18, 2015) (not designated for publication), discr'y review refused (Tex. Apr. 24, 2016); see also, e.g., United States v. Alexander, 526 F.2d 161, 168 (8th Cir. 1975) ("Based upon the presentment of this particular form of scientific evidence [i.e. a polygraph test], present-day jurors, despite their sophistication and increased educational levels and intellectual capacities, are still likely to give significant, if not conclusive, weight to a polygraphist's opinion as to whether the defendant is being truthful or deceitful in his response to a question bearing on a dispositive issue in a criminal case."); People v. Anderson, 637 P.2d 354, 361 (Colo. 1981) (en banc) (stating that, "[b]ecause of its aura of scientific infallibility, we believe that jurors are likely to give significant, if not conclusive, weight to a polygrapher's opinion as to whether the accused was truthful in his response to a question regarding a dispositive issue in a criminal case"), abrogated on other grounds by People v. Shreck, 22 P.3d 68, 74-77 (Colo. 2001) (en banc); People v. Logan, 954 N.E.2d 743, 752-53 (Ill. Ct. App. 2011) ("The general rule in Illinois is to preclude introduction of evidence regarding polygraph examinations and their results because:  (1) the evidence is not sufficiently reliable to establish guilt or innocence; and (2) the quasi-scientific nature of the polygraph examination may cause the trier of fact to give it undue weight, despite its lack of reliability."  (citing People v. Jefferson, 705 N.E.2d 56 (Ill. 1998))); State v. Grier, 300 S.E.2d 351, 360 (N.C. 1983) ("We are also disturbed by the possibility that the jury may be unduly persuaded by the polygraph evidence.").

While this Court reiterated in Damron the long-standing rule that proof of polygraph exam results is not admissible, we went on to hold that voluntary statements made in conjunction with a polygraph exam might be admissible.  Damron, 151 S.W.3d at 517.  Significantly, this Court did not confront in Damron the issue of a criminal defendant seeking to adduce proof about the polygraph exam in order to cast doubt on the veracity of his post-polygraph statements.  Therefore, we now note two caveats with respect to this Court's broad statements in Damron.

### Constitutional Right to Challenge Confession

We first note that, while this Court's pronouncements in Damron regarding the general inadmissibility of polygraph results may appear all-encompassing, the issue for our determination in Damron did not require us to consider a criminal defendant's constitutional rights to inform the jury about the circumstances surrounding his admissions.  See generally Crane v. Kentucky, 476 U.S. 683 (1986).

In Crane, the Supreme Court recognized that "evidence about the manner in which a confession was secured will often be germane to its probative weight, a matter that is exclusively for the jury to assess," id. at 688, and that "the physical and psychological environment that yielded the confession can also be of substantial relevance to the ultimate factual issue of the defendant's guilt or innocence," id. at 689.  As the Court

13

emphasized, "[c]onfessions, even those that have been found to be voluntary, are not conclusive of guilt." Id. Accordingly, "a defendant's case may stand or fall on his ability to convince the jury that the manner in which the confession was obtained casts doubt on its credibility." Id. Therefore, a criminal defendant's constitutional rights to present a defense and to the procedural fairness guarantee of an opportunity to be heard will not permit the State "to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence." Id. at 690.

This Court voiced similar concerns in State v. Echols, 382 S.W.3d 266 (Tenn. 2012), in which we stated that, "[w]hile the trial court's role is to decide the voluntariness of a defendant's statement in determining its admissibility as evidence at trial, that does not alter the function of the jury to consider the truthfulness of a statement made to the police." Id. at 288 (citation omitted). Accordingly, we held that, to aid the jury in resolving the question of the veracity of a defendant's statement to the police, "the jury may hear evidence of the circumstances under which the confession was procured." Id. at 288-89 (quoting State v. Pursley, 550 S.W.2d 949, 950 (Tenn. 1977)). Giving effect to these concerns, this Court held that the trial court erred in not allowing the defendant in Echols to cross-examine the interrogating officer about redacted portions of the recorded interrogation. Id. at 289; see also, e.g., Torres, 82 S.W.3d at 252 (holding that trial court erred by not allowing a defendant to introduce a redacted videotape of a prior interrogation "to demonstrate the circumstances surrounding the defendant's [subsequent] statement and to allow the jury to assess the reliability and credibility of [his] confession"); State v. Garrett, No. E2009-02365-CCA-R3-CD, 2011 WL 486846, at *5 (Tenn. Crim. App. Feb. 11, 2011) (recognizing that "[r]ules of procedure and evidence are designed to assure fairness and reliability in the criminal trial process" (citing Chambers, 410 U.S. at 302)); id. at *4 ("Exclusions of evidence may violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution even though the exclusions comply with rules of evidence. Principles of due process require that a defendant in a criminal trial have the right to present a defense and to offer testimony" (citing Flood, 219 S.W.3d at 316-17; Chambers, 410 U.S. at 294; State v. Brown, 29 S.W.3d 427, 431 (Tenn. 2000))); State v. Burns, 29 S.W.3d 40, 48 (Tenn. Crim. App. 1999) ("We recognize the longstanding rule in Tennessee that once a confession is admitted into evidence, a jury may hear evidence concerning the circumstances under which the confession was procured in order to determine whether the defendant made the confession and whether it is true." (citing Pursley, 550 S.W.2d at 950, 952; Wynn v. State, 181 S.W.2d 332, 333 (Tenn. 1944))); cf. State v. Garron, 827 A.2d 243, 256 (N. J. 2003) (recognizing that "when the mechanistic application of a state's rules of evidence or procedure would undermine the truth-finding function by excluding relevant evidence necessary to a defendant's ability to defend against the charged offenses, the [federal] Confrontation . . . Clause[] must prevail" (citing Chambers, 410 U.S. at 302; State v. Budis, 593 A.2d 784, 790 (N.J. 1991))).

Applying these principles, other courts have recognized an accused's right to present evidence about a polygraph exam in order to explain the circumstances surrounding his confession even where the general rule prohibits the admission of polygraph evidence. For instance, in Rogers v. Commonwealth, 86 S.W.3d 29 (Ky. 2002), the Kentucky Supreme Court reversed the defendant's conviction and remanded for a new trial, in part because the trial court prohibited the defendant from introducing evidence that he confessed only after being told by his polygraph examiner that he had failed the exam. The prosecution argued on appeal that "Kentucky's long-standing exclusion of evidence of polygraph results, and rejection of any reference to polygraph examinations, constitutes a 'valid state justification' for the trial court's ruling." Id. at 38-39 (footnotes omitted). The Kentucky high court rejected this argument, holding that, "in the circumstances of this case, the defendant's right to present a defense trumps our desire to inoculate trial proceedings against evidence of dubious scientific value." Id. at 39. The court continued:

> The crux of Appellant's defense is that he was coerced and coached into a confession by the interrogation techniques—including the use of a polygraph examination—employed by Lt. Payton and Det. Kearney. Appellant contends that when the investigating officers informed him that he had failed the polygraph examination and that he had lied to Lt. Payton in the process, he—in large part because of his limited intellectual capabilities[]—confessed to a crime he did not commit. By preventing Appellant from making any reference to the polygraph examination, the trial court pulled the proverbial rug out from under Appellant's defense and left Appellant unable to present the jury with the factual circumstances that he alleged caused him to confess falsely.

> While this Court's position on the admissibility of polygraph evidence is clear, we also recognize that "[e]vidence relating to the circumstances surrounding [incriminating] statements . . . may be indispensable to [an] appellant's right to present a defense to the crime charged."

> . . . .

> We . . . hold that, although polygraph evidence is not admissible in Kentucky, a defendant—and only the defendant—has the right, as a matter of trial strategy, to bring evidence of a polygraph examination before the jury to inform the jury as to the circumstances in which a confession was made. In the circumstances of this case, we believe the trial court's exclusion of this evidence prevented Appellant from placing relevant evidence as to the credibility of his confession before the fact-finder, and we thus hold that the trial court erred to Appellant's substantial prejudice

15

when it prevented Appellant from informing the jury as to the circumstances surrounding the disputed confession.

Id. at 39-40 (footnotes omitted); see also, e.g., People v. Melock, 599 N.E.2d 941, 959-60 (Ill. 1992) (holding that defendant was entitled to new trial because trial court precluded him from adducing polygraph proof "for the limited purpose of determining the credibility and reliability of [his] confession"); State v. Schaeffer, 457 N.W.2d 194, 197, 195 (Minn. 1990) (holding that, "[n]othwithstanding the general inadmissibility of polygraph evidence," the trial court did not err in allowing the defense to cross-examine the interrogating officer about the polygraph exam, "getting [the officer] to admit that he did not obtain a confession until after he told defendant he had failed the [polygraph] exam"); State ex rel. Kemper v. Vincent, 191 S.W.3d 45, 50 (Mo. 2006) (en banc) (holding that the Missouri rule of completeness would apply to admit polygraph test and results where "they formed the circumstances surrounding the confessions that are the basis of the State's case" and emphasizing that "[t]he credibility of a confession is a matter for the jury, and evidence of the circumstances surrounding the confession is essential in order for the jury to assess credibility" (citing Crane, 476 U.S. at 688-89)); People v. Kogut, 805 N.Y.S.2d 789, 791 (N.Y. App. Div. 2005) (recognizing that "while polygraph evidence is not admissible on the issue of guilt or innocence, if a proper foundation is established, such evidence may be admitted on the limited issue . . . of the voluntariness of defendant's confession").[7]

### Voluntary Statements May Be Inadmissible

The second caveat with respect to the Damron decision is to emphasize that its holding dealt with whether statements made by the defendant during his post-polygraph interview were *voluntary*, that is, not coerced in violation of the defendant's constitutional rights. See State v. Davidson, 509 S.W.3d 156, 189 (Tenn. 2016) ("The due process clauses of the Fifth Amendment and Fourteenth Amendment of the United States Constitution require a confession to be voluntary before its admission into evidence."). Damron was not decided on the basis of our Rules of Evidence. Rather, we held that a criminal defendant's statements made during a post-polygraph interview may be admissible *if* they are voluntary in the constitutional sense *and* "*also* are consistent

_____

[7] Other courts also have recognized that polygraph evidence may be admissible for other limited purposes. For instance, the United States Court of Appeals for the Fifth Circuit has held that "testimony concerning a polygraph examination is admissible where it is not offered to prove the truth of the polygraph result, but instead is offered for a limited purpose such as rebutting a defendant's assertion that his confession was coerced." United States v. Allard, 464 F.3d 529, 534 (5th Cir. 2006) (citing United States v. Kampiles, 609 F.2d 1233, 1244-45 (7th Cir. 1979); Tyler v. United States, 193 F.2d 24 (D.C. Cir. 1951); United States v. Johnson, 816 F.2d 918, 923-24 (3d Cir. 1987)); see also State v. Castagna, 901 A.2d 363, 373-74 (N.J. 2006) (holding that the trial court erred in denying defendants the right to cross-examine a prosecution witness concerning her polygraph test results, not because those results were reliable, but to impeach the witness because the test results caused the witness to change her statement).

16

with *other* applicable constitutional and evidentiary rules." <u>Damron</u>, 151 S.W.3d at 518 (emphases added). Thus, <u>Damron</u> sets forth a two-prong analysis.

In this case, the trial court determined that the Defendant's statements satisfied the first prong of <u>Damron</u>, i.e., the statements he made during the post-polygraph interview were voluntary in the constitutional sense. The propriety of the trial court's ruling on that issue is not before us. Rather, our review is limited to the trial court's conclusion under <u>Damron</u>'s second prong that admission of the Defendant's voluntary statements would *not* be consistent with other evidentiary rules.

With this background in mind, we turn now to the specific issue before us: whether the Court of Criminal Appeals misapplied the standard of review when it concluded that the trial court abused its discretion in ruling that evidence of the post-polygraph interview should be excluded because, although the interview contained proof that was relevant to the State's prosecution of the Defendant, the probative value of that proof was "substantially outweighed by the danger of unfair prejudice."

*The Court of Criminal Appeals' Review*

In its opinion reversing the trial court, the Court of Criminal Appeals held as follows:

> The trial court determined that the danger of unfair prejudice was the fact that Defendant "would need to refer to the polygraph examination in order to explain the context of his statements so that the jury could fully understand his statements." Therein lies [sic] the trial court's erroneous assessment of the evidence and abuse of discretion. First, the trial court incorrectly evaluated the danger of unfair prejudice resulting from Defendant's presumed response to the evidence and not the danger of unfair prejudice resulting from the statements themselves. <u>See</u> <u>State v. James</u>, 81 S.W.3d 751, 757 (Tenn. 2002) (stating that the probative value of the evidence is weighed against "the risk that *the evidence* will unfairly prejudice the trial"). The statements, in and of themselves, would not unfairly prejudice Defendant because with adequate redaction, Defendant's statements would appear as nothing more than a confession. Secondly, Defendant's responses to the proffered statements need not include a reference to the polygraph examination. Without a reference to the polygraph examination, Defendant could still provide context for the statements by showing that they were part of an extended interrogation where Defendant was repeatedly confronted with the accusations, asked leading questions, and accused of lying.

17

McCaleb, 2018 WL 2465143, at \*4 (emphasis added in McCaleb).  Thus, the Court of Criminal Appeals relied on two bases for concluding that the trial court abused its discretion, and we will consider each of these bases in turn.

<u>The Source of Unfair Prejudice</u>

The crux of the first identified reason underlying the Court of Criminal Appeals' analysis hinges on its assertion that the "unfair prejudice" contemplated by Rule 403 must be determined with reference *only* to the challenged item of evidence.  According to the Court of Criminal Appeals, if that evidence, in and of itself, does not create the danger of unfair prejudice which substantially outweighs the probative value of that evidence, then the evidence may not be excluded.  Under this construction of Rule 403, a trial court may not consider the *context* in which the challenged evidence is sought to be admitted.  Rather, the danger of "unfair prejudice" must be considered in a vacuum which contains only the evidence itself.

In support of this narrow interpretation of Rule 403, the Court of Criminal Appeals cited a single case, this Court's decision in <u>State v. James</u>, 81 S.W.3d 751 (Tenn. 2002).  We turn, then, to a careful examination of that decision.

In <u>James</u>, the defendant had been charged with aggravated robbery, especially aggravated kidnapping, and attempted felony escape.  <u>Id.</u> at 754.  In order to prove an element of the attempted felony escape charge, the State needed to establish that the defendant was incarcerated for a felony at the time he tried to escape.  The defendant offered to stipulate to his status as an incarcerated felon, but the State refused.  <u>Id.</u>  Over the defendant's objection, the State was permitted to adduce testimony that, at the time of his attempted escape, the defendant was serving sentences for especially aggravated robbery, second degree murder, and especially aggravated kidnapping.  <u>Id.</u> at 756.  The trial court ruled that the evidence was admissible under Rule 404(b), which sets forth the criteria for determining the admissibility of a person's "other crimes, wrongs, or acts."  <u>Id.</u> at 757; Tenn. R. Evid. 404(b).  On appeal, the Court of Criminal Appeals concluded that the evidence should have been excluded pursuant to Rule 403.  <u>James</u>, 81 S.W.3d at 757.

Upon this Court's review, we first determined that the disparity between the trial court's and the Court of Criminal Appeals' application of the Rules "suggests strongly that courts are unclear as to the proper rule to apply when determining the admissibility of specific instances of a person's prior conduct."  <u>Id.</u> at 757.  Accordingly, as a preliminary matter, this Court undertook "to clarify when Evidence Rules 401, 403, and 404(b) should be applied."  <u>Id.</u>

In due course, we determined that Rule 404(b) was the proper evidentiary rule to be applied to the matter before the trial court.  <u>Id.</u> at 759.  Because our eventual holding

18

was based upon our construction and application of Rule 404(b), this Court's preliminary pronouncements about the interplay between Rules 401 and 403 were mere dictum. See Staten v. State, 232 S.W.2d 18, 19 (Tenn. 1950) (recognizing that an appellate court's "expressions on certain things . . . which are not necessary for a determination of the lawsuit" are "known as dictum" and are not controlling "when the question rises again"). Moreover, those dictum pronouncements were exceedingly brief and did not include an in-depth analysis:

> Only after the court finds that the proffered evidence is relevant [pursuant to Rule 401] does the court then weigh the probative value of that evidence against the risk that the evidence will unfairly prejudice the trial. If the court, in its discretionary authority, finds that the probative value is *substantially* outweighed by its prejudicial effect, the evidence may be excluded [pursuant to Rule 403].

Id. at 757. This cursory explanation of the application of Rule 403 that was not necessary to the ultimate issue before us in James simply does not support the Court of Criminal Appeals' conclusion in this case that the trial court erred by not limiting its consideration of unfair prejudice to the Defendant's incriminating statements themselves without regard to the Defendant's constitutional rights to explain the circumstances surrounding those statements.

Moreover, the language of Rule 403 itself does not support this narrow approach. As set forth above, Rule 403 provides that relevant evidence "may be excluded if *its* probative value is substantially outweighed by *the* danger of unfair prejudice . . . ." Tenn. R. Evid. 403 (emphases added). While the text of Rule 403 specifically limits the source of the probative value to be considered by the trial court, it does not specifically limit the source of the danger of unfair prejudice. Indeed, other panels of the Court of Criminal Appeals have recognized that, in making the determination to exclude evidence pursuant to Rule 403, "the trial court must consider, among other things, the questions of fact that the jury will have to consider in determining the accused's guilt as well as other evidence that has been introduced during the course of the trial." State v. Williamson, 919 S.W.2d 69, 78-79 (Tenn. Crim. App. 1995) (citing State v. Dulsworth, 781 S.W.2d 277, 287 (Tenn. Crim. App. 1989)); see also, e.g., State v. Tucker, No. E2013-02727-CCA-R3-CD, 2014 WL 4415376, at *8 (Tenn. Crim. App. Sept. 9, 2014), perm. app. denied (Tenn. Feb. 19, 2015).

Obviously, all evidence admitted on behalf of one party is subject to attack by the other party. In criminal cases, the accused has a *constitutional* right of cross-examination. See State v. Brown, 29 S.W.3d 427, 430-31 (Tenn. 2000) (recognizing that a criminal defendant has the right to cross-examine witnesses pursuant to the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution). There is nothing in the text of Rule 403 that specifically prohibits a trial

19

court from considering an accused's potential cross-examination of a proffered prosecution witness when attempting to determine whether the admission of that witness' testimony will give rise to "the danger of unfair prejudice."

In our view, the proper construction of Rule 403 permits the trial court to exclude evidence if its probative value "is substantially outweighed by the danger of unfair prejudice" that will arise or is likely to arise *in conjunction with* the admission of the evidence. No evidence is admitted in a vacuum, and the admission of all evidence is subject to the possibility of attack on cross-examination. A trial court's contemplation of "unfair prejudice," therefore, may extend beyond merely the impact of a prosecution witness' testimony on direct examination (or the impact of an exhibit admitted through that witness). Accordingly, as the trial court did in this case, the trial court may consider not only the impact of the evidence itself but the impact of the potential cross-examination resulting from the admission of the evidence.

This approach to Rule 403, particularly in a criminal trial, allows a trial court to recognize and effectuate Rules 102 and 106 as well as the accused's constitutional rights to explain the circumstances surrounding his incriminating statements. Moreover, this approach to Rule 403 permits the trial court to exercise its discretion in a manner that recognizes the overarching concern of a criminal defendant's fundamental right to a fair trial.

As a result, we hold that it was appropriate for the trial court to consider in this case the potential defense response to the admission of the Defendant's incriminating statements. More specifically, we hold that it was well within the trial court's discretion to consider under Rule 403 both the Defendant's constitutional right to attack the credibility of his "confession" by informing the jury of the circumstances under which he "confessed" as well as the potential effects on the trial of that attack.[8]  See, e.g., Rogers,

_____

[8] Our holding on this point takes into account not only a criminal defendant's constitutional rights but also the overarching goals of our Rules of Evidence, set forth *supra*. We acknowledge that a few other courts have taken an approach more akin to that adopted by the Court of Criminal Appeals below. See State v. Hart, 791 P.2d 125, 128 & n.4 (Ore. 1990) (in banc) (holding that trial court erred by excluding defendant's "sanitized" pre-polygraph statements under Oregon's equivalent to Rule 403 on basis that the probative value of the statements would be outweighed by the prejudicial effect of the polygraph evidence the defendant might produce in response, reasoning that "[a]ny adverse inference to defendant would come from his own examination [of the witness], not from the evidence proffered by the state" and rejecting the argument that "Rule 403 should be applied when the prejudice arises from the evidence that would serve to rebut the proffered evidence"); see also State v. Dressel, 765 N.W.2d 419, 427 (Minn. Ct. App. 2009) (holding that trial court erred by suppressing defendant's post-polygraph statement on basis that defendant should not be forced to choose between admitting he failed a polygraph test and remaining silent while prosecution adduces statements he made after being challenged with polygraph results; no reference to Minnesota equivalent of Rule 403); cf. United States v. Boyle, 675 F.2d 430, 433 n.3 (1st Cir. 1982) (rejecting defendant's argument that his response to prosecution's proof would render probative value of prosecution's proof substantially outweighed by danger of unfair prejudice, stating that prosecution should not "be deprived of important probative evidence merely

86 S.W.3d at 40 (holding that trial court committed reversible error by preventing defendant from informing jury that his confession was made in conjunction with polygraph); Melock, 599 N.E.2d at 959-60 (same); cf. Vincent, 191 S.W.3d at 49-50 (holding that Missouri rule of completeness permitted admission of polygraph test and results as circumstances relevant to credibility of confession).

Had the trial court in the instant case determined that a redacted version of the Defendant's post-polygraph interview was admissible, as advocated by the State, the trial court then would have been faced with the possibility that the Defendant would seek to admit proof of his polygraph exam, either through the admission of the redacted portions of the videotape or through the cross-examination of Sergeant Kennemore. That scenario would have placed the trial court between the proverbial rock and a hard place. On the one hand, the State was entitled to prove the charges against the Defendant by providing the jury with his incriminating statements. On the other hand, the Defendant was entitled to provide the jury with an explanation of the circumstances surrounding his incriminating statements. Although the trial court had ruled that the Defendant's statements were "voluntary" for purposes of the Fifth and Fourteenth Amendments, the Defendant was entitled to try to convince the jury that his incriminating statements should not be believed. See Crane, 476 U.S. at 690-91. The difficulty with preserving this constitutional right of the Defendant was that it allowed the jury to be informed about the polygraph exam and its results. While the trial court could have provided the jury with a limiting instruction that it was to consider the polygraph examination only as to the effect it might have had on the credibility of the Defendant's incriminating statements,[9] the trial court, in the exercise of its sound discretion, was entitled to conclude that such an instruction would have been ineffective to prevent the jury from concluding that the polygraph results proved the Defendant was guilty of the charges against him.[10] If based on the results of the polygraph, a jury's decision to convict the

---

because one of defendant's possible answers thereto would necessitate revealing that he had been charged with another crime").

[9] Tennessee Rule of Evidence 105 provides that "[w]hen evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court upon request shall restrict the evidence to its proper scope and instruct the jury accordingly."

[10] A number of courts have questioned the efficacy of a jury instruction to prevent jurors from relying improperly on polygraph evidence. See, e.g. United States v. Alexander, 526 F.2d 161, 168 (8th Cir. 1975) ("To the extent that the polygraph results are accepted as unimpeachable or conclusive by jurors, despite cautionary instructions by the trial judge, the jurors' traditional responsibility to collectively ascertain the facts and adjudge guilt or innocence is preempted."); Anderson, 637 P.2d at 361 ("In our view, despite any cautionary instruction or admonition from the court, the jurors' traditional responsibility to collectively ascertain the facts to determine whether guilt has been proven would be prejudiced by the admission of polygraph evidence."); Grier, 300 S.E.2d at 360 (referring to "the potential decisiveness of polygraph testimony despite cautionary instructions").

Defendant would be made on an improper basis, the "unfair prejudice" that Rule 403 is intended to prevent.

We emphasize that we remain focused on the trial court's discretion in conducting the balancing test set forth in Rule 403. We do not hold that the trial court made the only ruling that we would have deemed within the bounds of its sound discretion. As set forth above, our abuse of discretion standard of review "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives." Lee Med., Inc., 312 S.W.3d at 524. In this case, the trial court made its choice after weighing the Defendant's incriminating statements, which the trial court described as possessing only "some" probative value,[11] against the potential admission of the polygraph proof *and the jury's potential misuse of that proof.* After appropriately weighing these concerns, the trial court concluded that the evidence should be excluded. This decision by the trial court, in light of the trial court's unique position to assess the impact of evidence on juries, was within the parameters of the trial court's sound discretion while conducting the balancing test required by Rule 403. More specifically, the factual basis for the trial court's decision is properly supported by proof in the record, the trial court properly identified and applied the most appropriate legal principles applicable to the issue, and the trial court's decision was within the range of acceptable alternatives. See Lee Med., Inc., 312 S.W.3d at 524.

### Second-Guessing the Trial Court

Returning to the Court of Criminal Appeals' decision in this case, as indicated above, the panel also provided a second reason in support of its conclusion that the trial court abused its discretion. The Court of Criminal Appeals disagreed with the trial court's conclusion that the Defendant "would need to refer to the polygraph examination in order to explain the context of his statements" and asserted that, in responding to the admission of his incriminating statements, the Defendant would not need to include references to the polygraph. McCaleb, 2018 WL 2465143, at *4. We disagree with this point of the intermediate appellate court's analysis, as well. First, the Court of Criminal Appeals' claim that the Defendant could adequately provide the jury with sufficient context by showing that his statements "were part of an extended interrogation where [he] was repeatedly confronted with the accusations, asked leading questions, and accused of lying," id., ignores the key circumstance that Sergeant Kennemore's repeated accusations that the Defendant was lying were presented to the Defendant as scientific fact *based on the polygraph.* There is a significant difference between a police officer saying, "I don't believe you" or "I believe the victim over you" and saying "the

---

[11] The trial judge stated that, after he had reviewed the transcript of the interview, he was "not sure that [the Defendant] is truly confessing or whether he is agreeing with the suggestions that are made by the interrogator."

22

polygraph proves that you are lying." Indeed, the trial court described Sergeant Kennemore's tactics as "referring to the power of the polygraph."

It is obvious that the Defendant's strongest case to the jury, and one he would be entitled to make, would be that he understood himself *scientifically proven guilty*, regardless of what he actually remembered. Although the trial court ruled that the Defendant's incriminating statements were *constitutionally* voluntary, a jury might view those same statements as less than believable *if* allowed to consider the impact of Sergeant Kennemore's repeated references to the polygraph on the Defendant's state of mind.

And therein lay the dilemma faced by the trial court. Admission of the redacted interview would require the Defendant to be allowed the choice of adducing proof about the polygraph results, proof that this Court has determined to be inherently unreliable and, even more troubling, would likely be given inappropriate weight by a jury. The Defendant faced the prospect of a fundamentally unfair trial if he did not inform the jury about the circumstances surrounding his confession and also faced the prospect of a fundamentally unfair trial if he did. Cf. Hubbell v. State, 754 N.E.2d 884, 891 (Ind. 2001) (stating that requiring a criminal defendant to choose between incomplete questioning about his polygraph examination, thereby foregoing his Sixth Amendment rights, and revealing unfavorable polygraph examination results "would present an impermissible choice"). The trial court did not abuse its discretion by taking these concerns into account in its ruling under Rule 403.

Second, this analysis by the Court of Criminal Appeals essentially constituted a reweighing of the evidence before the trial court and a substitution of its judgment for that of the trial court. This approach is contrary to our abuse of discretion standard of review.

In sum, we hold that the trial court conducted the Rule 403 balancing test within the parameters of its sound discretion. Accordingly, we are constrained to reverse the judgment of the Court of Criminal Appeals.

Exclusion of Sgt. Kennemore's Testimony

Finally, to the extent the State is arguing that the trial court committed reversible error in ruling inadmissible Sergeant Kennemore's testimony about the Defendant's admissions, the State failed to adduce that testimony at the hearing. As set forth above, the State adduced testimony from Sergeant Kennemore about the manner in which he conducted the polygraph and post-polygraph interview but did not pursue Sergeant Kennemore's testimony about what the Defendant eventually admitted about the accusations. Tennessee Rule of Evidence 103 provides that "[e]rror may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the

party is affected, and . . . the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context." Tenn. R. Evid. 103(a)(2). This failure of proof by the State precluded the trial court from making specific findings about Sergeant Kennemore's proposed testimony and precludes this Court from reviewing the issue. See Tenn. R. App. P. 13(c) (limiting this Court's consideration of facts on appeal to those "established by the evidence in the trial court and set forth in the record . . . ."); see also, e.g., State v. Hall, 958 S.W.2d 679, 691 n.10 (Tenn. 1997) ("[G]enerally, if an offer of proof is not made, the issue is deemed waived and appellate review is precluded."); Davis v. Hall, 920 S.W.2d 213, 218 (Tenn. Ct. App. 1995) (stating that, "[i]n the absence of an offer of proof and the inclusion of the testimony in the record," an appellate court cannot consider the trial court's alleged error of excluding the testimony). Accordingly, the State is not entitled to relief on this basis. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error . . . .").[12]

## Conclusion

We hold that the trial court did not erroneously assess the evidence or incorrectly evaluate the danger of unfair prejudice when determining whether to exclude the Defendant's post-polygraph statements under Rule 403. We further hold that the Court of Criminal Appeals erred when it held to the contrary. Accordingly, we reverse the judgment of the Court of Criminal Appeals and remand this matter to the trial court for further proceedings consistent with this opinion.

_____
JEFFREY S. BIVINS, CHIEF JUSTICE

---

[12] We note that the State additionally claims that the Defendant waived any objection to Sergeant Kennemore's testimony. This argument also is without merit. The statement made by defense counsel during the first hearing upon which the State relies was made prior to the trial court's ruling, which effectively negated any alleged "waiver" by the Defendant. The Defendant has not contested the trial court's ruling on this issue. Accordingly, we reject the State's contention that the Defendant waived his objections to Sergeant Kennemore's testimony.